[No. 7577.   Decided May 5, 1909.]

TENA BUTLER, *Appellant*, v. SUPREME COURT OF THE
INDEPENDENT ORDER OF FORESTERS, *Respondent.*[1]

INSURANCE—DEATH—PRESUMPTION FROM ABSENCE—TIME OF DEATH
—EVIDENCE—QUESTION FOR JURY.  The sudden unexplained disappear-
ance and absence of a man for seven years raises a presumption of
death, the time thereof being a question for the jury; and in an
action for insurance, where it appears that the man was under
middle age, with a wife and two small children, and was strongly
attached to his family, respected in the community, and in good cir-
cumstances, the jury would be justified in finding that death was the
cause of his disappearance (Mount and Chadwick, JJ., dissenting).

SAME—DEFENSES—ESTOPPEL—INCONSISTENT CLAIM IN PRIOR AC-
TION—MUTUALITY—PREJUDICE.  A wife who, upon advice of counsel,
secured a divorce for the purpose of clearing up the title to real
estate (her husband having suddenly disappeared some years before
without any explanation, and all efforts to find trace of him having
failed) is not estopped, after the lapse of seven years from the date
of his disappearance, from bringing an action on a benefit certificate
upon his life and claiming therein that he was dead at the time the
action for divorce was commenced; especially where such estoppel
would not be mutual and did not mislead or injure the other party.

SAME—WHO MAY CLAIM—PREJUDICE.  An estoppel cannot be
pleaded or relied upon by one who was not injured or did not rely
upon the acts constituting it.

Appeal from a judgment of the superior court for Spokane
county, Kennan, J., entered May 18, 1908, in favor of the
defendant by direction of the court, upon discharging the
jury, dismissing an action on a benefit insurance certificate.
Reversed.

*Belden & Losey,* for appellant, cited: *Tisdale v. Con-
necticut Mut. Life Ins. Co.,* 26 Iowa 170, 96 Am. Dec. 136;
*Whiteley v. Equitable Life Assurance Society,* 72 Wis. 170,
39 N. W. 369; *Hancock v. American Life Ins. Co.,* 62 Mo.
26; *Ryan v. Tudor,* 31 Kan. 366, 2 Pac. 797; *Reedy v. Milli-
zen,* 155 Ill. 636, 40 N. E. 1028; *Hunter v. Hunter,* 111 Cal.

[1]Reported in 101 Pac. 481.

261, 43 Pac. 756, 52 Am. St. 180, 31 L. R. A. 411; *Dahlman v. Forster*, 55 Wis. 382, 13 N. W. 264; *Heagany v. National Union*, 143 Mich. 186, 106 N. W. 700; *State ex rel. Spencer v. Moore*, 33 N. C. 160, 53 Am. Dec. 401; *Spencer v. Roper*, 35 N. C. 333; *Doe v. Nepean*, 27 Eng. C. L. Rep. 42, 5 Barne & Adolph. 42; *Nepean v. Doe*, 2 M. & W. Exch. 893; *Doe v. Jesson*, K. B. (1805) 6 East 80; *In re Phene's Trusts*, L. R. 5 Eq. 346; *State v. Plym*, 43 Minn. 385; *Wentworth v. Wentworth*, 71 Me. 72; *Policeman's Benevolent Ass'n of Chicago v. Ryce*, 213 Ill. 9, 72 N. E. 764, 104 Am. St. 190; *Williams v. Williams*, 63 Wis. 58, 23 N. W. 110, 53 Am. Rep. 253.

*Samuel R. Stern*, for respondent, contended, among other things, that the plaintiff was estopped.    16 Cyc. 679; 11 Am. & Eng. Ency. Law (2d ed.), 389, 446; *Davis v. Wakelee*, 156 U. S. 680, 15 Sup. Ct. 555, 39 L. Ed. 578; *Ferry v. Ferry*, 9 Wash. 239, 37 Pac. 431; *Campbell v. Stephens*, 66 Pa. St. 314; *Olympia v. Knox*, 49 Wash. 537, 95 Pac. 1090; *Phillips v. Olympia*, 21 Wash. 153, 57 Pac. 347; *Calhoun v. Leary*, 6 Wash. 17, 32 Pac. 1070; *Cloud v. Lawrence*, 12 Wash. 163, 40 Pac. 741; *Scott v. Mathews*, 25 Wash. 486, 65 Pac. 756; *State v. Thompson*, 116 La. 829, 41 South. 107; *Stine v. Goodman*, 29 Ky. Law 221, 92 S. W. 612; *Layne v. Layne*, 28 Ky. Law 810, 90 S. W. 555; *Jones' Estate v. Neal*, 44 Tex. Civ. App. 412, 98 S. W. 417; *Linn v. Ziegler*, 68 Kan. 528, 75 Pac. 489.

DUNBAR, J.—August Schneider, upon whose life the beneficiary certificate herein sued upon was issued, disappeared from his home in the city of Spokane, July 7, 1898. On that date he was last seen by Mrs. Belle Bassett, his sister-in-law, standing at his front gate talking to a stranger. When Mrs. Bassett was passing out of the gate, Mr. Schneider called to her, saying that he was going to the mines to be gone for several days, and asked her to come over and take care of the house and to sprinkle the lawn while he was gone, and re-

quested her to say to his wife, who was visiting away from home, that he would return home on the following Wednesday. Mrs. Schneider with the children had been visiting her parents for some time, but was expected home within a few days. Mrs. Bassett testified that she was detained at the house, at the work which she was assigned to do, a little later than usual on that day, and that Mr. Schneider came home in company with the stranger above indicated, before she had finished her work; that they were standing at the gate talking when she passed out when the conversation between herself and Mr. Schneider took place. Mrs. Schneider testified that every effort was made to locate her husband, but to no avail. She communicated the fact of his disappearance to his lodge. The lodge took up the search, and a committee was appointed to see if he could be found, but with the same result. The committee caused an account of his strange disappearance, together with a description of the man, to be published in the "Forester," a journal conducted for the benefit of the order, and asked any of the brothers reading the same, if one should hear or learn of a person answering Schneider's description, to report the matter to the Spokane lodge. No tidings of him were ever received.

Mrs. Schneider continued to pay the dues on her husband's policy until February 28, 1900, when, being as she says satisfied that he was dead, she discontinued the same. Shortly after this date she desired to, and had an opportunity to, sell the real property belonging to herself and Mr. Schneider, but the purchaser was not satisfied with the title, and refused to accept the same. She consulted counsel, and was advised that seven years would have to elapse before she could get a decree of the court adjudging her husband dead, unless she could produce some direct evidence of his death at an earlier date. This being impossible, it was decided that the only way she could obtain a salable title to the land would be to obtain a decree of divorce from Schneider on the ground of desertion, and have the property set aside to her as her sepa-

rate estate.   Under this advice the divorce proceeding was
instituted.   In due time a decree was granted, decreeing to
Mrs. Schneider all the real property that stood in Schneider's
name before his disappearance.

In 1906, after the expiration of seven years, plaintiff com-
menced this action to recover upon the policy of insurance
issued by the defendant, on the ground of the death of
Schneider.   The defendant answered, denying generally, and
interposing an affirmative defense to the effect that, at the
time of August Schneider's death, if he was presumed to be
dead, he was not in good standing in the defendant order, his
dues not having been paid until the end of the seven years.
It is also affirmatively pleaded that the plaintiff was estopped
by reason of her having brought her divorce action in April,
1900, and, for the purpose of her action, having regarded
August Schneider as alive, she could not come into court in
another and different action and contend that he was in fact
dead at the time the former action was instituted.   After the
pleadings were at issue and before the trial, the defendant's
attorney interposed a motion for judgment, urging as
grounds therefor the alleged estoppel above set forth.   This
motion was denied, trial was had before a jury, and, after
the introduction of plaintiff's testimony, defendant's attorney
renewed his motion to dismiss on the grounds stated in the
affirmative defenses; and after hearing argument of respec-
tive counsel, the court rendered decision, taking the case
from the jury and dismissing same on the grounds of estop-
pel urged by defendant.

The main contention of the appellant here is that the court
erred in refusing to allow the cause to go to the jury and
dismissing the action, and in entering the judgment which
followed said dismissal.   It seems to be well settled that the
presumption of death attaches when a party has been absent
for seven years without tidings of his existence.   There is
some conflict in authority as to the time at which death is
presumed to occur under such presumption; but the great

weight of authority is to the effect that that is a question of fact to be determined by the jury. In reaching a conclusion as to the time of death, much must necessarily depend upon the domestic attachment of the party. If it appears that the party had little regard for his family or friends, had no local attachments of any kind, was known to be on bad terms with his family or neglectful of it, or was in the habit of leaving his home for considerable periods of time without notifying his family or friends of his whereabouts, these circumstances would tend to diminish the presumption of death as the cause of the disappearance. But where the party is known to be sober and industrious, with strong domestic attachments, considerate, kind, and affectionate to his family, and generally regardful of the rights of others, and disappears suddenly from or leaves his home and the community in which he lives and where his interests are, without any explanation; these are circumstances so strong that, without more, the jury would be justified in concluding that death was the cause of his disappearance. This seems to be practically the case at bar, as shown by the testimony. It appears that Schneider was a man under middle age; that he had a wife and two children, a boy and a girl; that he was very strongly attached to his family; that no domestic infelicity had ever existed; that he was respected in the community; was in reasonably good circumstances, and that no possible cause could be assigned for his wilfully leaving his home under the circumstances which are assigned.

In laying down the rule of evidence Mr. Greenleaf, in his work on Evidence, vol. 1 (16th ed.), § 41, says:

"It is not necessary that the party be proved to be absent from the United States; it is sufficient, if it appears that he has been absent for seven years from the particular state of his residence without having been heard from. The presumption in such cases is, that the person is dead; but not that he died at the end of the seven years, nor at any other particular time. The time of the death is to be inferred by the jury from the circumstances."

In 2 Wharton's Law of Evidence (3d ed.), § 1277, it is said:

".   .   . ignorance, as to such person, after due inquiry, of all persons likely to know of him if he were alive; cessation of writing of letters, and of communications with relatives, in which case the inference rises or falls with the domestic attachments of the party. Thus, death may be inferred by a jury from the mere fact that a party who is domestic, attentive to his duties, and with a home to which he is attached, suddenly, finally, and without explanation, disappears."

In *Tisdale v. Connecticut Mut. Life Ins. Co.*, 26 Iowa 170, 96 Am. Dec. 136, the court said:

"Any facts or circumstances relating to the character, habits, condition, affections, attachments, prosperity and objects in life, which usually control the conduct of men, and are the motives of their actions, are competent evidence from which may be inferred the death of one absent and unheard from, whatever has been the duration of such absence."

The court then gives an instance of an honorable, upright citizen, who had enjoyed the confidence of his neighbors and his friends, was prosperous in business, rich in the affection of wife and children, who disappears and is never heard of afterwards. Says the court:

"Must seven years pass, or must it be shown that he was last seen or heard of in peril, before his death can be presumed? No greater wrong could be done to the character of the man than to account for his absence, even after the lapse of a few short months, upon the ground of a wanton abandonment of his family and friends."

And this, we think, is in accordance with the almost universal authority. This was the view taken by the trial court on this particular question, as shown from his remarks in granting the nonsuit. The court said:

"This case as far as the matter of the presumption of death is concerned, and whether it is necessary to overcome that presumption or to establish any presumption as to the time of his death, I think the case in the 26 Iowa presents a statement of facts almost parallel with those in this case, and that

the ruling of the court there was, that such circumstances could go to the jury and should be considered by them in determining whether the death occurred at the expiration of the period or as to when it did actually occur."

But the court indicated that, because the appellant had taken the position in the divorce proceeding that her husband was alive, she should now be estopped from denying that, and claiming that he died before the divorce action was commenced. The case was taken from the jury for that reason. On this proposition we are unable to agree with the learned trial court. The divorce action brought by her has nothing to do with determining the time of Schneider's death. Her opinion on that subject could not determine that question; and, as to the effect of that opinion on her, we do not think under the circumstances that it should work an estoppel. The action was brought under the advice of counsel, for the purpose of clearing her title. She was not certain as to his fate, but it should not estop her anyway, for she might have been honestly of the opinion at that time that he was probably alive. Necessarily it could have been nothing more than a probability, for she had not heard from him. And afterwards she might have received information which would cause her to change her mind in that respect, or further reflection without any further testimony might have wrought a change of opinion. So that this case, it seems to us, ought to be tried on the merits, and the truth elicited without regard to what was testified in any other case, which is really no evidence in this case. In addition to this, an estoppel must be mutual. There is nothing in this case to indicate that the respondent was in any way injured by the position taken by the appellant in the divorce proceeding, or that by reason of such position anything was done or neglected to be done by it which would in any manner prejudice it. It is fundamental that a party relying upon an estoppel must show that he has been prejudiced by the act of the party whom he is seeking to estop. Estoppels operate only towards par-

ties or privies, and the party who pleads an estoppel must be one who has in good faith been led to his injury. 16 Cyc. 777.

Some definitions of estoppel are cited by the respondent, to the effect that, in the broad sense of the term, estoppel is a bar which precludes a person from denying the truth of a fact which has, in contemplation of law, become settled by the acts and proceedings of judicial or legislative officers, or by the act of the party himself, either by conventional writing or by representations, express or implied, *in pais*. And further, "because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth." But while this is true of what an estoppel is, in the abstract, the party pleading it must show that he has been injured by reason of the acts of the party which he claims to be an estoppel, by reason of having relied on the representations of the person sought to be estopped, so that his position with reference to the matter in hand has been changed to his disadvantage. In this case it is not attempted to be shown in any way, and does not appear in any way, that the respondent was prejudiced by Mrs. Schneider's action in obtaining a divorce from her husband; and it is difficult to understand how it could be shown. The case which, it is said, the court relied upon, viz., *Potvin v. Denny Hotel Co.*, 37 Wash. 323, 79 Pac. 940, is not in point, because there the party complaining had relied upon Potvin's representations in the first instance, and had purchased the property by reason of said representations. But here nothing of the kind appears. If the fact existed that Schneider was dead at the time Mrs. Schneider ceased to pay his dues, that fact fixed the liability of the respondent, and it could not be modified or changed by any opinion expressed by Mrs. Schneider.

This question was directly passed upon in *Keels v. Mutual Reserve Fund Life Ass'n.*, 29 Fed. 198, where a woman had stated to the insurance company that the death of her husband had been caused by suicide, and afterwards claimed that

she had been mistaken, and that the real cause was accident, and not suicide. The court, in passing upon that question and upon some rules that had been laid down, viz., not that the mistake could not be corrected, but that the change of theory ought to have been submitted before the action to defend, said:

"This rule, however, seems to be very strict, and should not be applied to prevent the insurer from surprise or injury flowing from the acts of the plaintiff. The fact of death is communicated to the insurer. The question is made, did that death occur within the risks assumed? The proofs by the claimant are submitted early after the death, and on such information as can then be obtained. The insurer takes his own time. He examines the proofs, and makes his own investigation elsewhere,—gathers all the testimony he can. Is it just to deprive the claimant of any results favorable to him which such investigation may disclose? Suppose that the facts changing altogether the character of the death be discovered after action, or on the trial, in the unexpected disclosure by a witness under cross-examination, shall the claimant be deprived of this, and shall the jury be told to disregard it, and find against the truth?"

That was a good deal stronger case in favor of respondent than the case at bar, where no communication or representation whatever had been made to the insurance company, but such representation had been made only in a proceeding to which the insurance company was not a party.

Under the law and the equities of the case, we think the court erred in taking the case from the jury, and the judgment is therefore reversed, with instructions to proceed with the trial of the cause.

RUDKIN, C. J., CROW, FULLERTON, and GOSE, JJ., concur.

MOUNT, J. (dissenting)—To my mind important facts are omitted from the statement of the case made in the majority opinion. At the time the insured disappeared he left a deed transferring all his property to the name of his wife. He did not state to what mines, or with whom, he was going,

although he had ample opportunity to do both. This is an action upon a contract of insurance. Before the appellant can recover, she must show that the insured is dead, and also that he died while the policy was in force. The policy was allowed to lapse after the insured had been gone for two years. It is the rule that a presumption of death follows after an absence of seven years, under certain conditions; but under the conditions shown in this case I do not think there can be any presumption that the insured died within the two years following his disappearance, or that he is now dead. He deliberately disappeared after making over all his property to his wife, and without making known to his relatives where or with whom he was going, and therefore under circumstances which show that in all probability he is still alive.

I think the judgment should be affirmed, and therefore dissent.

CHADWICK, J., concurs with MOUNT, J.