SAMBERG v. KNIGHTS OF THE MODERN MACCABEES.

1. INSURANCE—PROOF OF DEATH—EVIDENCE.

Letters tending to show that the insured, who has been absent more than seven years, had no cause to leave his wife, were admissible to strengthen the presumption of death created by 1 Comp. Laws, § 1225.

2. TRIAL—CONDUCT OF COUNSEL—ARGUMENT.

Improper argument may be cured by the trial court holding the statements improper, and, in the absence of a request for further instructions to the jury, is not ground for reversal.

3. INSURANCE—FRATERNAL BENEFICIARY ASSOCIATIONS—BY-LAWS—REASONABLENESS.

A by-law of a fraternal beneficiary association which attempts to abrogate a statute that raises a presumption of death from an absence of seven years, is unreasonable and invalid as to a policy executed prior to the adoption of the by-law.

4. SAME—DEATH—PRESUMPTIONS FROM ABSENCE—EFFECT OF EVIDENCE TO REBUT.

It is a question for the jury to determine whether the presumption of death is overcome by the evidence of a witness who testifies that he met the alleged decedent and talked with him before the trial.

Error to St. Clair; Tappan, J. Submitted October 21, 1909. (Docket No. 140.) Decided November 5, 1909.

Assumpsit by Anna Samberg against the Knights of the Modern Maccabees on a policy of insurance. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Frank E. Jones*, for appellant.

*Norman I. Miller* and *Hovey & Baird*, for appellee.

MOORE, J. Defendant is a fraternal beneficiary association. On the 10th day of March, 1889, Charles A. Samberg, then a resident of Port Huron, became a member of defendant order, and had issued to him a benefit certificate for $1,000. On or about November 24, 1894, this certificate was surrendered, and, in lieu thereof, a certificate in which Anna Samberg, his wife, was named as beneficiary, was issued. Mr. Samberg continued in the order, paid his assessments, and was in good standing until on or about March 16, 1900, when he left his home for Seattle, Wash. His wife continued to pay the dues and assessments until June, 1908. Mrs. Samberg received letters from her husband until on or about October 16, 1900, since which time she claims not to have heard from him or been able to gain any knowledge of his whereabouts. On November 1, 1907, plaintiff, as beneficiary, filed her claim with defendant order for the amount of said benefit ($1,000), in which she sets up the facts in regard to the absence and disappearance of her said husband for the period of seven years, "and alleges that the amount of said certificate is now due and payable to her as beneficiary of the insured, her said husband." The defendant order at its Great Camp Review in June, 1904, amended its by-laws by adding thereto section 88, which reads as follows:

" The absence or disappearance of a member of this order from his last known place of residence for any length of time, shall not be presumptive evidence of the death of the member and no right shall accrue under the certificate of membership to the beneficiary, nor shall any benefits be

paid until satisfactory proof has been made of the death of the member, aside from any presumption that might arise by reason of his absence."

The claim made by plaintiff was disallowed by the executive committee, and upon appeal was disallowed by the Great Camp, and suit was then brought by plaintiff, and from a judgment in her favor the cause is brought here by writ of error.

The first question that arises under the assignments of error is whether or not the letters written by Mr. Samberg to his wife were admissible in evidence. Objections were made to these letters when offered "as incompetent and immaterial, and for the reason that it is a communication between husband and wife, and therefore privileged and not admissible in evidence." Section 1225, 1 Comp. Laws, provides:

" If any person shall disappear and his whereabouts remain unknown, for the space of seven years, and no knowledge of such person can be procured for such space of seven years, he shall be presumed to be dead."

The letters were introduced for the purpose of strengthening the presumption of death created by the statute, by showing that at the time of his disappearance his relations with his wife and family were such as not to be a cause for his disappearance. We think they were competent.

Errors are assigned upon the argument of counsel. Some of the argument criticised was a fair argument in reply to statements made by opposing counsel. Some of it was clearly improper, and should not have been made. Upon the attention of the trial judge being called to the argument, he at once declared it to be improper, and that line of argument was not pursued further. Counsel for defendant was evidently satisfied with the course pursued, for he made no request to the judge for further instructions to the jury. See *People* v. *De Camp*, 146 Mich. 533 (109 N. W. 1047); *Davis* v. *City of Adrian*, 147 Mich. 300 (110 N. W. 1084).

The important question in the case is as to the effect of

the by-law adopted in 1904, 15 years after the insured became a member of the order, four years after his disappearance, and three years before the beneficiary ceased to pay assessments to defendant organization. The application for membership contained the following:

"That these statements with this application and the constitution of the Great Camp K. O. T. M. for Michigan shall form the basis for the contract for endowment."

The certificate issued under this application was payable on condition that—

"All agreements and warranties made by him in his application are found to be true, and he continues to comply with the laws, rules and regulations of the Great Camp for Michigan which are now or may hereafter be in force."

This certificate is made payable to the beneficiary named therein "upon satisfactory proof of the death of the said member."

We have already quoted the statute in relation to the presumption arising from a seven years' absence without intelligence concerning the person. It was undoubtedly enacted to meet a necessity growing out of the experiences of men. This rule has also been recognized in the absence of a statute. See *Heagany* v. *National Union*, 143 Mich. 186 (106 N. W. 700), and the many cases cited therein. It cannot be said that the insured in subscribing to his application contemplated the adoption of a by-law that would have the effect to render the provisions of a wholesome statute nugatory, and to have the further effect of making it practically impossible to make proofs of death in cases within the occasional experience of men.

There is a discussion of the rights of defendant association to enact by-laws in an opinion written by Justice OSTRANDER (*Wineland* v. *Knights of Maccabees*) found in 148 Mich. 608 (112 N. W. 696), in which it is recognized that a by-law to be valid must be reasonable. We hold that the by-law so far as this case is concerned is an unreasonable one.

The remaining question calling for discussion is stated by counsel as follows:

"Whether the presumption of the death of Charles Samberg was overcome by the testimony of witnesses who claim to have seen him alive after the seven years, so that it became the duty of the court to direct the verdict for defendant."

Upon that feature of the case the jury were instructed as follows:

"You are further instructed that you are carefully to weigh the proofs concerning the presence of Charles A. Samberg in the city of Petoskey in 1908. Of course, you will understand that if the witnesses for defendant saw Charles A. Samberg alive in Petoskey, as claimed, then the plaintiff cannot recover, whether his absence has been explained or unexplained. It is not the duty of the defendant to pay the amount of the certificate held by a member, unless it is shown that the member is dead, either actually or presumptively, as I have explained. If Charles A. Samberg was alive and in Petoskey as claimed, then it is established that the payment of his assessments had made him a living member of the order, in good standing, and nothing more. His wife would have no more claim for the payment of this certificate than the beneficiary of any other living member of the order in good standing. There is no evidence that directly contradicts the evidence of the witness Frank E. Bowen to the effect that he was acquainted with Charles A. Samberg, and that he saw him, recognized him, and talked with him September 28 or 29, 1908. If you believe that either Bowen or the witness Paul saw Mr. Samberg in 1908, then that ends the case, and your verdict must be for the defendant. The evidence of Bowen can be overcome only upon the finding by you that he was either mistaken in his identification of Samberg, or that he is falsifying. I shall leave it for you to determine whether he did see and know Samberg as he claims. This is to be considered by you in connection with all the other proofs of the plaintiff and defendant in the case respecting the disappearance, absence, and all other matters that will enable you to determine whether Mr. Samberg was seen alive in Petoskey in 1908, as claimed. As I have explained, if the defendant has

shown by proof that Mr. Samberg was alive in 1908, then your verdict should be for the defendant.

This is as favorable a charge as to the law upon that feature of the case as the defendant is entitled to.

Judgment is affirmed.

Grant, Montgomery, Ostrander, and McAlvay, JJ., concurred.