[No. 18415.    Department One.    April 24, 1924.]

ROSENA J. FORDYCE, *Respondent*, v. MODERN WOODMEN OF AMERICA, *Appellant*.[1]

COURTS (37)—INSURANCE (43)—WHAT LAW GOVERNS—RULE OF DECISION—COURTS OF OTHER STATES. Where a fraternal insurance society of Illinois issued a certificate to a resident of this state, and the place of the contract and performance and action on the certificate were all within this state, the decision of the courts of Illinois as to the effect of a by-law, enacted after the insurance became effective, is not binding on the courts of this state.

DEATH (1)—EVIDENCE—PRESUMPTION FROM ABSENCE. The sudden unexplained disappearance and absence of a man for seven years raises the presumption of death, from which the jury would be justified in finding that death was the cause of his absence where he was in middle life and strongly attached to a wife and minor children.

INSURANCE (196)—BENEFIT INSURANCE—CONTRACT—AMENDMENT OF BY-LAWS—VALIDITY—REASONABLENESS OF CHANGE. An amendment of a by-law of a fraternal insurance society, after the insurance takes effect, must be reasonable; and such an amendment declaring that, in case of the unexplained disappearance of the insured, the policy will not be paid until the expiration of his life expectancy, thereby postponing payment for forty years, is unreasonable and void.

[1]Reported in 225 Pac. 434.

LIMITATION OF ACTIONS (53)—ACCRUAL OF ACTION—ABSENCE—PRE-
SUMPTION AS TO DEATH. In an action on a fraternal benefit cer-
tificate, brought seven years after the unexplained disappearance
and absence of the insured on the presumption of his death, the
statute of limitations is suspended while the period of seven years
was running.

INSURANCE (207-210)—BENEFIT INSURANCE—RIGHT TO PROCEEDS OF
CERTIFICATE—ACCEPTANCE OF PREMIUMS—ESTOPPEL. A fraternal in-
surance society accepting premiums from the beneficiary, the wife
of the insured, after it knew of the disappearance of the insured,
and of her divorce and remarriage, cannot defeat an action on the
policy on the ground that she had remarried.

MACKINTOSH, J., dissents.

Appeal from a judgment of the superior court for
Spokane county, Huneke, J., entered May 14, 1923,
upon findings in favor of the plaintiff, in an action on a
fraternal benefit certificate, tried to the court. Af-
firmed.

*Truman Plantz, Geo. H. Davis,* and *Davis, Heil &
Davis,* for appellant.

*Arthur L. Hooper* and *James Emmet Royce,* for
respondent.

HOLCOMB, J.—Respondent's complaint, dated June
23, 1922, alleges that appellant is a fraternal bene-
ficiary society, incorporated under the laws of the state
of Illinois, and doing business in the state of Washing-
ton; that respondent is the same person as Rosena J.
Clisby, named as beneficiary in benefit certificate No.
792,696, issued by appellant to Frank W. Clisby on
December 2, 1902, whereby appellant agreed that, in
the event of Clisby's death while a member in good
standing of the society, it would pay to his beneficiary
the sum of $3,000. Paragraph 8 of the complaint is as
follows:

"That Frank W. Clisby on and prior to the 5th day
of January, 1915, resided in Seattle, King county,

Washington, with his wife, the plaintiff herein, and their two minor daughters; that he was in moderate circumstances, and was well, happy and contented; that he was a man of exemplary habits, and a total abstainer from intoxicating liquors, and was considerate, kind and affectionate to his family and generally regarding of the rights and feelings of others, and had strong domestic attachments; that he was a devoted husband and father, and when required to be absent from his home had continually written to his family at least once a day. That on January 4, 1915, the said Frank W. Clisby met two men in answer to an ad. inserted in one of the Seattle papers and agreed to go with the said men who theretofore were unknown to him, in a small gasoline launch upon the following day to a point in Puget Sound opposite Whidby Island, to take an inventory of a stock of goods. That he left his home on January 5th, 1915, after bidding an affectionate goodbye to the plaintiff. That from that time the plaintiff has not seen Frank W. Clisby nor heard from him except one letter written on the same day on the car en route to the dock, nor has any trace of him been found although diligent search has been made by the plaintiff, her friends and relatives, officers and members of the defendant and other fraternal organizations and the police. Wherefore, more than seven years have elapsed the plaintiff believes and alleges the fact to be that Frank W. Clisby is dead, and died on January 5, 1915.''

It is further alleged that respondent notified appellant of the disappearance of Clisby, and at the end of seven years from January 5, 1915, made formal proof of death, whereupon appellant refused payment of her claim; that she had paid appellant $282.25 for assessments on account of the certificate issued to Clisby, from January, 1915, to January, 1922. She demanded judgment for $3,000, with interest from January 5, 1922, and $282.25 paid in for assessments, with interest from the dates of the respective payments of the assessments.

Appellant answered, admitting the issuance of the benefit certificate; denied that respondent was the beneficiary therein; denied the allegations contained in paragraph 8 of the complaint; denied that plaintiff did file proof of the death of Frank W. Clisby, and that it was indebted to respondent. Appellant also set up six affirmative defenses.

The first affirmative defense was, in substance, that the alleged cause of action of respondent was founded on contract between appellant and Clisby, which consisted of Clisby's application for membership, the benefit certificate issued to him, and the by-laws of appellant then in force when the certificate was issued, and those subsequently enacted, and that, in his application for membership in November, 1902, Clisby agreed in substance to conform in all respects to the laws, rules and usages of the society then in force or that might thereafter be enacted or adopted, and that the application and the laws of the society should form the sole basis of admission to, and membership in, the society, and of the benefit certificate to be issued to him by the society. It is further alleged that the benefit certificate provided that, in case of the death of the member while in good standing, his beneficiary would be entitled to the sum of $3,000, with interest, "Provided, That all the conditions contained in this certificate and the by-laws of the society as the same now exist or may hereafter be modified, amended, or enacted shall be fully complied with." It is also alleged that the certificate further provided:

"No action can or shall be maintained on this certificate until after the proofs of death and claimant's rights to benefits, as provided for by the by-laws of this Society, have been filed with the Head Clerk and passed upon by the Board of Directors, nor unless

brought within eighteen months from the date of the death of the member.''

It is also alleged that the by-laws were amended or changed, to take effect from and after September 1, 1908, as follows:

''Section 66. Disappearance No Presumption of Death.—No lapse of time or absence or disappearance on the part of any member, heretofore or hereafter admitted into the Society, without proof of actual death of such member, while in good standing, in the Society, shall entitle his beneficiary to recover the amount of his benefit certificate, except as hereinafter provided. The disappearance or long continued absence of any member unheard of, shall not be regarded as evidence of death or give any right to recover on any benefit certificate heretofore or hereafter issued by the Society until the full term of the member's expectancy of life, according to the National Fraternal Congress Table of Mortality, has expired within the life of the benefit certificate in question, and this law shall be in full force and effect, any statute of any state or country to the contrary notwithstanding. The term 'within the life of the benefit certificate' as here used, means that the benefit certificate has not lapsed or been forfeited, and that all payments required by the by-laws of the Society have been made.''

It is further alleged in the affirmative defense that proofs of actual death of Frank W. Clisby had never been filed by respondent, and that the expectancy of life of Clisby, according to the National Fraternal Congress Table of Mortality, has not expired, and did not expire within the life of the benefit certificate issued by the society to Clisby and sued upon herein.

The second affirmative defense alleged that proofs of death as provided for in the by-laws in force at all times after January 5, 1915, were never filed with the head clerk of the society.

The third affirmative defense was that action was not

brought by respondent within eighteen months from the date of the alleged death of Clisby, as provided in the benefit certificate.

The fourth affirmative defense was that if Clisby died on January 5, 1915, as alleged, the action was not brought within six years from the time the cause of action accrued.

The fifth affirmative defense was that respondent is not the beneficiary, as provided in a section of the by-laws of this society, because she has remarried, having married one Fordyce on June 8, 1918, while § 45 of the benefit certificate provides that it shall be payable only to the wife or surviving children, including legally adopted children, or to some other person or persons named in the benefit certificate as beneficiary.

The sixth affirmative defense is that appellant, being organized .as a fraternal benefit society, incorporated under the laws of Illinois, and operating under a charter granted by that state, which provided that the society shall be organized and carried on.for the sole benefit of its members, and not for profit; that it is a fraternal society as defined by the statutes of Washington, duly licensed to transact business as such in this state, and that respondent's cause of action was founded on a contract between appellant and Clisby, which contract consisted of the charter and articles of association and by-laws of appellant, the application of Clisby, and the benefit certificate issued to him. The answer then· set up the provisions of the contract as set forth in the first affirmative defense, including § 66 of the by-laws, and the allegation that proof of the actual death of·Clisby had never been furnished appellant; that his expectancy of life had not expired at the time of the commencement of the suit. This affirmative defense then set forth in full the proceedings leading

up to and ending in the decision of the supreme court of Illinois in the case of *Steen v. Modern Woodmen of America,* 296 Ill. 104, 129 N. E. 546, setting up the opinion of the court in full, wherein that court held that the by-law in question was reasonable and valid, and appellant therefore alleged that that decision was the law governing the contract in question, and unless it was so construed appellant would be deprived of the benefits of the due faith and credit provisions of the United States constitution, § 1, art. IV.

One of the judges of the lower court sustained the demurrers as to the first and sixth affirmative defenses, and overruled them as to the other affirmative defenses, upon which respondent joined issue by reply and the cause went to trial.

The trial court made findings of fact which are amply sustained by the evidence, in favor of respondent. Among other things, it found from the circumstantial evidence adduced that Frank W. Clisby died on or about January 5, 1915. Conclusions of law and judgment followed accordingly.

Other pertinent facts shown by the evidence, documentary and otherwise, were that the fraternal insurance and benefit certificate was issued to Clisby in Spokane, this state. He became a member of the local society, or "Camp," in the nomenclature of the society, in Spokane; he was thirty-seven years of age at the time of his disappearance, and the period of expectancy, according to the mortality table introduced by appellant, was to the age of seventy-seven years. He therefore had an expectancy at the time of his death of about forty years. Hence, if the benefit assessments were required to be paid until the end of the period of expectancy, they would necessarily be paid for a period of about forty years from the time of the disappear-

ance of Clisby. Since his beneficiary was near middle life at the time of his disappearance, she may have died, also, long before the expiration of the forty years.

Many questions are extensively and elaborately discussed by appellant, but the pivotal question to be determined in this case is: "Does a by-law of a fraternal insurance society, enacted after the contract of insurance is effective, which declares that in case of the unexplained disappearance of the insured the proceeds of the policy will not be paid until the expiration of his life expectancy, prevent the beneficiary from recovering on the policy at the end of seven years?"

We are not bound by the decision upon the by-law in question and a similar benefit certificate issued in the state of Illinois, as contended by appellant. We are no more bound by the decision of the supreme court of Illinois in the case of *Steen v. Modern Woodmen of America,* 296 Ill. 104, 129 N. E. 546, than the supreme court of Illinois would be by a decision this court might make that a Washington domestic corporation might change its contracts, made and entered into in the state of Illinois, at will, regardless of the rights of the contract holder, or of statutory or declared public policy existing in the state of Illinois. *National Union v. Sawyer,* 42 D. C. App. 475; *Expressman's Mutual Benefit Ass'n v. Hurlock,* 91 Md. 585, 46 Atl. 957; 23 Cyc. 1555, 1556.

In the Maryland case, above cited, the supreme court observed:

"But without regard to authority, it would be a most remarkable situation if all the contracts made by our citizens with foreign corporations, under the same circumstances these were made, are to be construed, and the rights of the parties thereunder to be settled, by the laws of other states. We cannot adopt a view leading to such results."

In this case the place of contract, the place of performance and the place of trial are all within this state, and our laws must control all the questions presented. *Scudder v. Union Nat. Bank,* 91 U. S. 406; *Neufelder v. German American Ins. Co.,* 6 Wash. 336, 33 Pac. 870, 36 Am. St. 166, 22 L. R. A. 287; *Griesemer v. Mutual Life Ins. Co.,* 10 Wash. 202, 38 Pac. 1031.

Upon the principal question herein we have held that the sudden unexplained disappearance and absence of a man for seven years raises the presumption of death, the time thereof being a question for the jury; and in an action for insurance where it appears that the man was in middle life with a wife and two minor children, and was strongly attached to his family, respected in the community, and in good circumstances, the jury would be justified in finding that death was the cause of his absence. *Butler v. Supreme Court of Foresters,* 53 Wash. 118, 101 Pac. 481, 26 L. R. A. (N. S.) 293. The facts in this case are as strong as in that, or stronger.

The *Steen* case, *supra,* holds that the society may, by its by-laws made after the issuance and delivery of the benefit certificate to its member, not only change or add to laws of the society, but may change the rule of evidence itself, even though declared by statute or by judicial decision. That decision in itself is unreasonable, as has been intimated by courts which have decided upon this same by-law since that decision was handed down.

In *Boynton v. Modern Woodmen of America,* 148 Minn. 150, 181 N. W. 327, where the reasonableness of the identical by-law was involved, the court cited a number of cases upholding the rule that such by-law, made after the delivery of the benefit certificate to a

member, must be reasonable, and the court went on to say:

"At the time the insurance contract in the case at bar was entered into, it was settled law that an unexplained absence of seven years was competent evidence of death, and sufficient to justify recovery thereon by the beneficiary. The amended by-law not only abrogates that rule of evidence, and that method of proof of death, in which the insured perhaps can have no vested right, but materially changes the contract in point of substance by imposing upon the beneficiary the burden of continuing the payment of fees and assessments for a long period of time after the lapse of seven years' disappearance, namely, during the period of the insured's life expectancy. That the change is unreasonable seems the only fair conclusion. The opposite conclusion has been adopted in Illinois, the home of the defendant corporation, Ohio and Missouri. *Steen v. Modern Woodmen,* 296 Ill. 104, 129 N. E. 546; *Cobble v. Royal Neighbors,* (Mo. App.) 219 S. W. 118; *McGovern v. Brotherhood,* 85 Oh. St. 460, 98 N. E. 1128. We are not persuaded by the reasoning of the opinions in those cases. The result there arrived at borders too closely upon the technical or strict legal rights, wholly divorced from considerations of reasonableness, which are guiding elements in cases of the kind, and conflicts with the law of this state."

Our search discloses that even in Illinois the rule had been that subjecting the certificate of membership in a beneficiary order to subsequent by-laws and amendments was subject to the qualification that the later amendment or by-law should be reasonable and in harmony with the general policy of the order. It was accordingly held that a subsequent by-law was unreasonable and null, and one which the society was without authority to enact, which prohibited members from engaging in the business of keeping a saloon, and to at once cancel the certificates of members engaging

in such calling. *Modern Woodmen of America v. Weiland,* 109 Ill. 340.

The Missouri court of appeal case, cited in the Minnesota case above cited, was later reversed by the supreme court of Missouri in 291 Mo. 125, 236 S. W. 306.

The annotators in Ann. Cas. 1913C, at page 676, cite cases from nineteen jurisdictions in this country, England, Ireland and Canada, and no contrary decisions, and state it as a general rule that,

"It seems to be admitted very generally by the courts that where a member of a fraternal benefit society agrees in his application for membership to be bound by the laws and rules of the society then in force, and thereafter adopted, the society may, after he has become a member, make a reasonable amendment to its by-laws, and thereby bind him to compliance therewith. *The amendment, must, however, be reasonable in order to be binding.*"

The same conclusion is arrived at by the annotators in 17 A. L. R., at page 423, and, indeed, the supreme court, in the *Steen* case, *supra,* seem to admit that rule and to endeavor by their logic to sustain the reasonableness of the by-law, while other courts cannot and do not sustain its reasonableness. The following courts have, either upon this identical by-law or upon a disappearance by-law similar in terms and effect to the one in question, decided such by-law to be unreasonable and void: *National Union v. Sawyer,* 42 D. C. App. 475; *Modern Woodmen of America v. White,* 70 Colo. 207, 199 Pac. 965; *Gaffney v. Royal Neighbors of America,* 31 Idaho 549, 174 Pac. 1014; *Richey v. Sovereign Camp, W. O. W.,* 184 Iowa 10, 168 N. W. 276, L. R. A. 1918F 1116; *Haines v. Modern Woodmen of America,* 189 Iowa 651, 178 N. W. 1010; *Fryer v. Modern Woodmen of America,* 179 N. W. (Iowa) 160; *Olson v. Modern Woodmen of America,* 182 Iowa 1018,

164 N. W. 351; *Fleming v. Merchants' Life Ins. Co.*, 180 N. W. (Iowa) 202; *Hannon v. Grand Lodge Ancient Order United Workmen of Kansas*, 99 Kan. 734, 163 Pac. 169; *Modern Woodmen of America v. Hurford*, 193 Ky. 50, 235 S. W. 24, 21 A. L. R. 1340; *Samberg v. Knights of the Modern Maccabees*, 158 Mich. 568, 123 N. W. 25, 133 Am. St. 396; *Boynton v. Modern Woodmen of America*, 148 Minn. 150, 181 N. W. 327; *Cobble v. Royal Neighbors of America*, 291 Mo. 125, 236 S. W. 306; *Garrison v. Modern Woodmen of America*, 105 Neb. 25, 178 N. W. 842; *Roblin v. Supreme Tent of the Knights of Maccabees of the World*, 269 Pa. St. 139, 112 Atl. 70; *Supreme Lodge, Knights of Pythias v. Wilson*, 204 S. W. (Tex. Civ. App.) 891; *Sovereign Camp, Woodmen of the World v. Piper*, 222 S. W. (Tex. Civ. App.) 649; *Sweet v. Modern Woodmen of America*, 169 Wis. 462, 172 N. W. 143.

The reasoning in most of the above cases is impressive and convincing. It is unquestionable that the overwhelming weight of authority is against the decision of the Illinois court.

The demurrers as to the first and sixth affirmative defenses were, therefore, properly sustained; and the findings of fact and conclusions of law of the trial judge were correct.

As to the statute of limitations, it was obviously in suspense while the period of seven years was running, although, when the issue was presented, the trier of the facts could find upon substantial evidence that death occurred at or about the commencement of the period of presumption.

There is only one other question urged by appellant that merits consideration, and that is the contention that respondent is not entitled to the proceeds of the benefit certificate because she remarried. The facts in

this case are quite parallel with the facts in the case of *Security Benefit Ass'n v. Verdery*, 71 Colo. 150, 204 Pac. 895, where the court held that, where the fraternal benefit society knew that the member had disappeared, and his wife, the beneficiary of the certificate, had secured a divorce and had remarried, and the society had accepted payments of premiums on the certificate from her both before and after her divorce, it may not dispute her rights to recover. In the instant case, there is no question but that respondent was the wife of Clisby at the time he disappeared, and remained his wife until, from all the evidence obtainable, she and everyone acquainted with them and with the facts were convinced that Clisby was dead. She was named as beneficiary in the benefit certificate, and the fact that she had changed her name by marriage did not change her identity as beneficiary.

After a careful consideration of the whole case and of the contentions made by appellant, we are convinced that the judgment of the trial court was right and must be and is affirmed.

MAIN, C. J., TOLMAN, and PARKER, JJ., concur.

MACKINTOSH, J., dissents.