[No. 25272. *En Banc.* September 30, 1935.]

FLORA M. IRELAND, *Appellant,* v. METROPOLITAN LIFE
INSURANCE COMPANY, *Respondent.*[1]

[1]Reported in 49 P. (2d) 469.

*Eimon L. Wienir,* for appellant.

*Preston, Thorgrimson & Turner,* for respondent.

MAIN, J.—The plaintiff brought this action for the sum of one thousand dollars, she being the beneficiary named in an insurance policy for that amount. The trial was to the court with a jury, and a verdict was returned in favor of the plaintiff for the sum of one thousand dollars. The defendant moved (a) for a judgment notwithstanding the verdict; (b) for a new trial; and (c) in the alternative, for a judgment against it, notwithstanding the verdict, in the sum of $306, the amount of the paid-up insurance at the time the policy lapsed. The court overruled the first two motions and granted the third. From the judgment in favor of the plaintiff in the sum of $306, she appeals.

The facts are these: William Ireland and the plaintiff were married during the year 1917. Shortly thereafter, they moved to the city of Seattle, where the husband found employment as a mechanic with the street railway system. The married life of the parties appears to have been harmonious until 1923, when a child was born. Subsequently, there was a marked change in their domestic relations, which culminated, during the latter part of June, 1925, in a bitter quarrel and a threat on the part of the husband to kill his wife, their child and the wife's mother.

Soon thereafter, the appellant brought an action for divorce and obtained an order prohibiting the husband from coming to their home; and also for temporary alimony in the sum of sixty dollars per month, the first payment of which was to be made July 11, 1925. Thereafter, the husband went to stay with his brother and his wife, who lived in the same city, and continued with his employment. In the divorce action, there was an effort made at reconciliation, at the suggestion of the trial judge, which failed.

July 3, 1925, the husband wrote his wife a letter couched in the most endearing terms and with an appeal for reconciliation. This was addressed, "My dear Wife Flora." The appellant declined to renew the marital status of the parties, and on July 9, 1925, the husband wrote the appellant another letter, which, in tone and words, was bitter in the extreme. In this letter, the appellant was addressed, "Mrs. W. Ireland." In it, there were expressions such as: "If I was a cur I would not go alone;" "I am true to my word but most men would *Kill*—so I will see you every day now and you confess your grave mistake to all you have told you can be forgiven;" and "Keep a light in your room on account of *Ghosts.*" Shortly after this letter was written, the husband left the home of his brother and his wife, where he had been staying, and had not been heard from since, even up to the time of the trial which occurred April 2, 1934, a period of more than seven years having elapsed since his disappearance.

During the time of his disappearance, the brother and his wife and friends had diligently and extensively sought to find out his whereabouts. While he was staying with his brother and his wife, they both testified that he made no threat of suicide. At the time he left, he took with him a suitcase and clothing, but did not take his best suit, overcoat or automobile. Shortly after his disappearance, he wrote his brother that the latter should have his automobile and told him where to get it. He also stated in the letter that, if he needed money, he would send to the brother for it.

While he was staying with his brother, he at one time spoke of going to Australia. He also said that he would not pay the alimony. In the letter, he made the statement that he would take a trip across the water, but the brother did not know whether he meant the ocean or Puget Sound. In the letter, he also said to

tell the foreman where he was employed that he would see him again. The brother testified that he did not understand that he had made a disposition of all of his effects. The letter had been lost, and the brother and his wife testified as to its contents. Neither of them got the impression from the letter that their brother contemplated, or was intending to commit, suicide.

The policy upon which this action was based lapsed, by reason of failure to pay premiums, October 12, 1925. The theory of the action was that the husband of the appellant had committed suicide prior to that date, and for this reason she was entitled to recover the face of the policy of one thousand dollars.

The controlling question is whether there were facts, supported by evidence, from which it could be reasonably inferred by the jury that the husband of the appellant had committed suicide prior to the time that the policy lapsed.

It is a settled rule that presumption of death attaches where a party has been absent for seven years without tidings of his existence. If the party disappearing had little regard for his friends or family, had no local attachments of any kind, or was known to be on bad terms with his family or neglectful of it, this would tend to diminish the presumption of death as the cause of disappearance. If, on the other hand, he was sober and industrious, with strong domestic attachments, considerate, kind, and affectionate to his family, and generally regardful of the rights of others, and disappears suddenly or leaves his home and the community in which he lives and where his interests are, without any explanation, the jury would be justified in concluding that death was the cause of disappearance.

In *Butler v. Supreme Court of Foresters,* 53 Wash. 118, 101 Pac. 481, 26 L. R. A. (N. S.) 293, it was said:

"It seems to be well settled that the presumption of death attaches when a party has been absent for seven years without tidings of his existence. There is some conflict in authority as to the time at which death is presumed to occur under such presumption; but the great weight of authority is to the effect that that is a question of fact to be determined by the jury. In reaching a conclusion as to the time of death, much must necessarily depend upon the domestic attachment of the party. If it appears that the party had little regard for his family or friends, had no local attachments of any kind, was known to be on bad terms with his family or neglectful of it, or was in the habit of leaving his home for considerable periods of time without notifying his family or friends of his whereabouts, these circumstances would tend to diminish the presumption of death as the cause of the disappearance. But where the party is known to be sober and industrious, with strong domestic attachments, considerate, kind, and affectionate to his family, and generally regardful of the rights of others, and disappears suddenly from or leaves his home and the community in which he lives and where his interests are, without any explanation; these are circumstances so strong that, without more, the jury would be justified in concluding that death was the cause of his disappearance. This seems to be practically the case at bar, as shown by the testimony."

The case of *Fordyce v. Modern Woodmen of America,* 129 Wash. 364, 225 Pac. 434, is based upon substantially the same facts with a like holding.

While there is a presumption that death has resulted when a party has been absent for seven years without tidings of his existence, there is no presumption as to the exact time within that period when death occurred. The burden of proving that death took place at any particular time within the seven years is on the person claiming a right to the establishment of

which that fact is essential. It is incumbent upon the party bringing the action to prove facts and circumstances from which the jury would be justified in finding that death took place at a particular time or before a particular date.

In *Peterson v. Northwestern Mutual Life Ins. Co.*, 134 Wash. 172, 235 Pac. 15, it was said:

"There is a presumption that death has resulted when a party has been absent for seven years without tidings of his existence, but the time when death occurred is a question for the jury. *Butler v. Supreme Court of Foresters*, 53 Wash. 118, 101 Pac. 481, 26 L. R. A. (N. S.) 293; *Fordyce v. Modern Woodmen of America*, 129 Wash. 364, 225 Pac. 434. The burden of proving that death took place at any particular time within the seven years is on the person claiming a right to the establishment of which that fact is essential. 8 R. C. L., p. 711; *Clement v. Knights of Maccabees of the World*, 113 Miss. 392, 74 South. 287; *Solomon v. Redona*, 52 Cal. App. 300, 198 Pac. 643; *Bradley v. Modern Woodmen of America*, 146 Mo. App. 428, 124 S. W. 69; *Goodier v. Mutual Life Ins. Co. of New York*, 158 Minn. 1, 196 N. W. 662. The term of the policy, in the case now before us, expiring before the expiration of the seven-year period, it was incumbent upon the respondent, she bringing the action, to prove facts and circumstances from which the jury would be justified in finding that death took place before the expiration of the policy."

Where the facts and circumstances are of such a nature as to call for the drawing of inferences, the question is one for the jury. *Shaw v. Prudential Ins. Co.*, 158 Wash. 43, 290 Pac. 694. If there are facts and circumstances, supported by the evidence, showing that there is a greater probability of death than life at a particular date, the question is one for the jury. *Carpenter v. Supreme Council Legion of Honor*, 79 Mo. App. 597. But the question of whether death occurred prior to a particular date cannot be left to con-

jecture, speculation or guess on the part of the jury. *United States v. Robertson,* 44 F. (2d) 317; *United States v. O'Brien,* 51 F. (2d) 37; *Carlson v. Equitable Life Assurance Society,* 188 Minn. 43, 246 N. W. 370.

In the case last cited, it was said:

"Given the necessary absence unexplained and without tidings, the presumption is that the absentee no longer lives at the expiration of the seven years, but there is no presumption whatsoever as to the time when he died within that period. It remains for the party interested in proving death at an earlier date to show that fact by circumstances from which the inference of death can be legitimately drawn. As on any other question of fact, a jury will not be permitted to guess or speculate in reaching a verdict."

Many other cases to the same effect might be cited, but the rule is general; and, so far as we are informed, it has not yet been held by this or any other court that the jury has the right to fix the time of death, or that it occurred prior to a certain date within the seven-year period, unless there is evidence of facts and circumstances from which the inference can be reasonably drawn that death occurred at or before a certain time. In other words, the time of death, which is a question of fact, cannot, in this kind of a case, as well as in any other, be left to guess or speculation by the trier of the facts.

In *Peterson v. Northwestern Mutual Life Ins. Co., supra,* it was distinctly held that it was incumbent on the one

". . . bringing the action, to prove facts and circumstances from which the jury would be justified in finding that death took place before the expiration of the policy."

In the quotation made from *Butler v. Supreme Court of Foresters, supra,* it will be observed that it is said that the time at which death is presumed to occur is "a question of fact to be determined by the jury." A

similar expression appears in the case of *Fordyce v. Modern Woodmen of America, supra,* and in *Peterson v. Northwestern Mutual Life Ins. Co., supra.* But in all of those cases, there were facts and circumstances, supported by evidence, which made the time of death a question of fact for the jury. Obviously, it was not intended by the court in any of those cases to announce the rule that, in a case of this character, the general and ordinary rule that a fact must be established by evidence or inferences from facts supported by evidence, should be departed from, and that, in a case of this kind, the jury might rest its verdict on speculation, conjecture or guess.

We now come to the question of whether, under the facts in this case, as above stated, the jury were justified in drawing the inference that the husband of the appellant committed suicide prior to the expiration of the insurance policy. The only evidence that such might have been his intention was one or two loose declarations made when a divorce action was being discussed between the parties, and the letter of July 9, 1925. These declarations must be considered in connection with all the other facts and circumstances. It must be remembered that, when the letter was written, the husband of the appellant was in a bad state of mind, and a careful reading of that letter leads irresistibly to the conclusion that his purpose was to say things that would cause his wife as much mental suffering as possible. He made no such declaration, or gave any such intimation, to his brother or his wife, for whom he undoubtedly had a real affection. The fact that he said to his brother that he would send to him for money if he needed it, and to tell his foreman that he would see him again, is indicative of a desire to live, rather than an intention to commit suicide.

When all the facts and circumstances are considered,

as above stated, and some others that appear in the evidence, it appears to us that the conclusion must be that they do not furnish a basis for a reasonable inference that the husband of the appellant committed suicide prior to October 13, 1925.

The judgment will be affirmed.

MILLARD, C. J., MITCHELL, GERAGHTY, STEINERT, and BEALS, JJ., concur.

BLAKE, TOLMAN, and HOLCOMB, JJ., dissent.

