[No. 27251. *En Banc.* December 5, 1938.]

ALTA MAE HOWARD, *Respondent,* v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, *Appellant.*[1]

[1]Reported in 85 P. (2d) 253.

*Kerr, McCord & Carey* and *R. B. Albertson,* for appellant.

*Furber & Furber (Lewis M. Dawson,* of counsel), for respondent.

SIMPSON, J.—In this case, an action was brought to recover upon a life insurance policy.

In plaintiff's complaint, filed October 7, 1937, it was alleged that, February 4, 1929, defendant insurance company issued a policy upon the life of Charles A. Navone, now deceased, in the amount of five thousand dollars, payable to his wife, Alta Mae Navone, now

Alta Mae Howard, as beneficiary; that Charles A. Navone was a business man in the city of Seattle, living with his wife and family; that, just prior to that time, the insured had suffered a nervous breakdown, and thereafter was worried, despondent, and made threats of suicide. It was further stated that, March 1, 1930, Mr. Navone fell or threw himself from a ferry boat in Lake Washington, was drowned, and his body has never been recovered; that more than seven years have elapsed since that time without tidings from the insured by his family, friends, or acquaintances.

The allegations concerning the policy were to the effect that all premiums due thereon to March 1, 1930, were fully paid; that a semi-annual premium was paid by plaintiff July 24, 1930, in the amount of $80.85; and that, May 4, 1937, plaintiff furnished defendant with written proof of loss covering the death of the insured and demanded payment of the insurance money, which was refused.

Defendant demurred to the complaint and the same was overruled. Then defendant answered, admitting the issuance of the policy, the lapse of seven years since March 1, 1930, and the filing of certain affidavits purporting to establish the death of Charles A. Navone March 1, 1930. The other allegations, including that of the death of Mr. Navone, were denied. In its affirmative defense, defendant admitted the semi-annual premium payment upon the policy as claimed by the plaintiff, and alleged further that the policy of insurance lapsed for nonpayment of the premium due January 24, 1931. A further affirmative defense was to the effect that, if Charles A. Navone is now dead, as claimed by the plaintiff, he died on March 1, 1930; that the cause of action, if any, accrued on that date, more than six years had elapsed from that date prior

to the filing of the complaint, and was barred by the statute of limitations.

Plaintiff's reply put in issue the affirmative allegations of defendant's answer.

The action was tried to a jury, and at the close of the plaintiff's evidence, the defendant challenged the sufficiency of the evidence on the merits in its favor. This motion was denied. A verdict was rendered in the sum of five thousand dollars, plus $80.85, together with interest from May 4, 1937, upon the former amount, and from July 24, 1930, upon the latter amount, until paid. Motions for judgment n. o. v. and for a new trial were presented and denied. Judgment upon the verdict was then made and entered.

Defendant appeals, urging several errors, only three of which are necessary to consider. They are to the effect that the court erred in overruling appellant's demurrer to respondent's complaint in view of the fact that the action had not been commenced within the time limited by law, in denying appellant's challenge to the sufficiency of the evidence at the close of respondent's case, and in denying appellant's motion for judgment on the merits in its favor.

Appellant elected to submit the case to the jury upon the evidence presented by respondent.

The record discloses the following facts: Charles A. Navone and plaintiff were married September 22, 1920, and lived together as husband and wife until his disappearance. They had two children. Mr. Navone was a man devoted to his family, and was held in high esteem by his relatives, neighbors, friends, and business associates, and was of cheerful and happy disposition prior to the visiting upon him of financial adversities.

For some time, he had been very successful in his business undertakings; however, during the year 1929

he lost in certain business ventures between ten and twelve thousand dollars, and at the end of that year found that he had lost most of his savings and was indebted in the sum of approximately seventy-five hundred dollars, including a large mortgage on his home. He worried continuously, lost several pounds in weight, was nervous, and suffered from loss of sleep. Many times he told his wife, mother, and friends, "he couldn't go on," that he would shoot himself, and that he would drown himself.

February 28, 1930, a doctor was called, who found that Navone was suffering from nervous prostration and advised that he be taken to a hospital. On that day, he told his mother, "Maybe you won't see me any more." March 1, 1930, he told his wife that he was going on a business trip in his car. He called his mother by telephone and told her he would see her as he passed. He then went in his car to the Leschi ferry landing in Seattle. Upon arriving there, he parked the car on the ferry landing, with the key in the ignition. An acquaintance saw Navone in the smoking room of the ferry on its nine o'clock morning run from Leschi to Medina. He talked to Mr. Navone and offered him a ride from Medina, which was refused, Navone stating that his car was on the ferry. The acquaintance left the smoking room when the boat was about half way across Lake Washington. That was the last time Navone was seen by this witness. He could not swim. Two witnesses who knew the insured testified they noticed the foot passengers as they got off the boat, but that Navone was not among them.

After the insured failed to appear, concerted efforts were made to locate him through search among his friends and acquaintances and through the medium of radio and newspaper announcements. A police dog was taken to Medina and used in an effort to locate

Navone. The members of his family believed that the insured committed suicide by jumping into Lake Washington, March 1, 1930. He has neither been seen nor heard from since his acquaintance saw him on the ferry boat. In 1934, respondent secured a decree of divorce on the ground of abandonment, and remarried May 4, 1935.

The ordinary life insurance policy in question was issued by the appellant, Equitable Life Assurance Society of the United States, February 4, 1929. One payment of the premium was paid by respondent July 24, 1930, in the sum of $80.85. Proof of death in the form of affidavits setting out facts similar to those presented in evidence were furnished appellant company May 4, 1937. The appellant refused to make payment, and this action resulted.

Appellant contends that the facts and circumstances disclosed by the evidence prove that the insured committed suicide March 1, 1930, and because of that fact the cause of action on the policy accrued as of that date, and that the period of the statute of limitations (Rem. Rev. Stat., § 157 [P. C. § 8162]) had expired long before the complaint was served and filed. It will be noted that this contention is contrary to the stand taken by appellant at the time of the trial, when, in its answer, it denied on information and belief that the insured died March 1, 1930, or at all.

█ █ Does the evidence, unaided by the presumption afforded by the rule relative to disappearance for seven years, prove that the insured died on the date he was last seen?

While death, like any other fact, may be proved by circumstantial evidence, the evidence discloses no reason for Mr. Navone's disappearance except his mental condition. He was devoted to his wife and their children. He was well thought of in his community. He

was not in a position of peril when last seen. No one saw him drown; and while he talked of suicide, he had never been guilty of any act wherein he sought to take his own life.

There is no presumption that a person has committed suicide. The law presumes that a person shown to be alive at a given time remains alive until the contrary is shown by some sufficient proof, or, in the absence of such proof, until a different presumption arises. 8 R. C. L. 707.

In our opinion, there were not sufficient facts presented to prove the death of the insured without the aid of the presumption arising after the expiration of the seven years' absence.

In *Ireland v. Metropolitan Life Ins. Co.*, 184 Wash. 1, 49 P. (2d) 469, this court stated:

"It is a settled rule that presumption of death attaches where a party has been absent for seven years without tidings of his existence. If the party disappearing had little regard for his friends or family, had no local attachments of any kind, or was known to be on bad terms with his family or neglectful of it, this would tend to diminish the presumption of death as the cause of disappearance. If, on the other hand, he was sober and industrious, with strong domestic attachments, considerate, kind, and affectionate to his family, and generally regardful of the rights of others, and disappears suddenly or leaves his home and the community in which he lives and where his interests are, without any explanation, the jury would be justified in concluding that death was the cause of disappearance."

While proof of disappearance and unexplained absence for seven years or more raises a presumption of death, it raises no presumption as to the date or time after the disappearance when such death occurred. It is for the jury to determine the date of death from all the facts and circumstances presented. *Peterson v.*

*Northwestern Mutual Life Ins. Co.,* 134 Wash. 172, 235 Pac. 15; *Shaw v. Prudential Ins. Co.,* 158 Wash. 43, 290 Pac. 694; *Ireland v. Metropolitan Life Ins. Co., supra; Harris v. Security Benefit Ass'n,* 185 Wash. 25, 52 P. (2d) 329.

In *Peterson v. Northwestern Mutual Life Ins. Co., supra,* we said:

"The burden of proving that death took place at any particular time within the seven years is on the person claiming a right to the establishment of which that fact is essential. 8 R. C. L., p. 711; *Clement v. Knights of Maccabees of the World,* 113 Miss. 392, 74 South. 287; *Solomon v. Redona,* 52 Cal. App. 300, 198 Pac. 643; *Bradley v. Modern Woodmen of America,* 146 Mo. App. 428, 124 S. W. 69; *Goodier v. Mutual Life Ins. Co. of New York,* 158 Minn. 1, 196 N. W. 662. The term of the policy, in the case now before us, expiring before the expiration of the seven-year period, it was incumbent upon the respondent, she bringing the action, to prove facts and circumstances from which the jury would be justified in finding that death took place before the expiration of the policy."

Facts somewhat similar to those presented in the case at bar were shown in the following cases: *Butler v. Supreme Court of Foresters,* 53 Wash. 118, 101 Pac. 481, 26 L. R. A. (N. S.) 293; *Fordyce v. Modern Woodmen of America,* 129 Wash. 364, 225 Pac. 434; *Peterson v. Northwestern Mutual Life Ins. Co., supra; Harris v. Security Benefit Ass'n, supra.* In each of those cases, we held that the beneficiary had the right to wait until seven years after the disappearance of the insured before bringing action to collect upon the policy of insurance.

While no two cases rest upon exactly the same character of evidence, we think the beneficiary was entitled to await the efflux of the same period of time as was accorded in the above-mentioned cases.

In the case of *Wells v. Equitable Life Assur. Soc.,* 130 Neb. 722, 266 N. W. 597, the circumstantial evidence proved the insured's death with much more certainty than in the instant case. The facts there showed that the insured had fits of melancholy, and would sit around the house and would not talk. He once tried to kill himself by putting a gas tube in his mouth, and also threatened to jump in the river, and mentioned other ways of committing suicide. His condition gradually grew worse as time went on. He sometimes would leave home and remain away for a whole day and tell nobody where he went, and at one time he was gone two days and two nights. On the day of his disappearance, his widow testified that he went all to pieces, had no control over himself, took the car and went away, came back late, would not eat supper, went to the store, paid his bill, brought back some money and steak, and went away again in the car. He retired about ten o'clock, and about midnight got up, put on his coat and hat, and went out the back door. He took no money with him, leaving it on the dresser. He was not seen after that time. The insured was attached to his family. About a week after his disappearance, a body was taken out of the river close by, "bloated past recognition." In view of that evidence, the court held that the insured's death could not be proved except by the aid of the seven-year presumption, stating:

"It is the opinion of this court that in a disappearance case the cause of action does not accrue until the expiration of the seven-year period, for death is then established by the presumption then arising, and the limitation period runs from the termination of the seven-year period."

See, also, *Linneweber v. Supreme Council Catholic Knights,* 30 Cal. App. 315, 158 Pac. 229, and *Griffin v. Northwestern Mutual Life Ins. Co.,* 250 Mich. 185, 229 N. W. 509.

The next question presented is whether the seven-year period after the disappearance of Mr. Navone suspended or tolled the six-year statute of limitations relating to actions on written contracts.

In *Warner v. Modern Woodmen of America,* 124 Wash. 252, 214 Pac. 161, 34 A. L. R. 87, this court held that a beneficiary had a reasonable time after the lapse of seven years from the time of the disappearance in which to file claim of death and bring an action upon an insurance policy, and that the lapse of four years after the expiration of the seven-year period was not a reasonable time within which to commence the action.

In *Fordyce v. Modern Woodmen of America, supra,* the statement was made:

"As to the statute of limitations, it was obviously in suspense while the period of seven years was running, . . ."

In *Harris v. Security Benefit Ass'n, supra,* the court approved the above rule announced in the *Fordyce* case, *supra,* but also held that, notwithstanding the fact that the six-year period following the seven-year period had expired, the continued receipt and acceptance of premium payments on the policy continuously from the time of the disappearance of the insured in 1917 up to and including January, 1933, tolled the statute of limitations after the expiration of the six-year period following the expiration of the seven-year presumption period.

Under Rem. Rev. Stat., § 155 [P. C. § 8160], actions can only be commenced within the time prescribed by the statute of limitations after the cause of action has accrued. A cause of action accrues when it becomes a present enforceable demand, when the party owning it is entitled to begin and prosecute an action thereon. It accrues at the moment he has a legal right

to maintain an action to enforce it, and the statute of limitations is then set in motion. *Edwards v. Beck,* 57 Wash. 80, 106 Pac. 492; *Los Angeles County v. Metropolitan Cas. Ins. Co.,* 135 Cal. App. 26, 26 P. (2d) 699; *Sweetser v. Fox,* 43 Utah 40, 134 Pac. 599, Ann. Cas. 1916C, 620, 47 L. R. A. (N. S.) 145.

It is evident that respondent did not have the legal right or ability to maintain an action upon the policy issued to her husband until the seven-year period had expired which enabled her to prove her husband's death. Prior to that time, she owned a cause of action, but it had not ripened into one that could be enforced.

7 Couch, Cyclopedia of Insurance Law (1930 ed.), 5729, § 1640 states:

"Where it is necessary to rely on the presumption of death arising from seven years' unexplained absence, the general rule is that the cause of action accrues at the expiration of the seven-year period, so that proofs of loss cannot be made before such expiration, and, in the absence of contract or statutory provision to the contrary, limitations run from the date thereof; that is, where limitations run from the date of death, and death is established by the presumption arising from seven years' unexplained absence, the limitation period runs from the date when the presumption of death arose. In fact, in case death has to be inferred from seven years' unexplained absence, proof of death cannot be made until the expiration of such period, and, consequently, the Statute of Limitation does not begin to run until such proofs can be made. Again, if a statute provides that all actions for which no period of limitations is prescribed shall be commenced within six years next after the cause of action accrued, and not thereafter, and insured had disappeared, and the fact of his death was disputed by insurer, a cause of action is held not to accrue within the meaning of the statute until the expiration of the time when the presumption of death in such cases is raised."

Cases from other states which follow this rule are: *Benjamin v. District Grand Lodge No. 4, etc.,* 171 Cal. 260, 152 Pac. 731; *Wells v. Equitable Life Assur. Soc., supra; Sovereign Camp, etc. v. Piper,* 222 S. W. (Tex. Civ. App.) 649; *Supreme Lodge, Knights of Pythias v. Wilson,* 204 S. W. (Tex. Civ. App.) 891; *Haines v. Modern Woodmen of America,* 189 Iowa 651, 178 N. W. 1010; *Griffin v. Northwestern Mutual Life Ins. Co., supra; Linneweber v. Supreme Council Catholic Knights, supra; American Nat. Ins. Co. v. Hicks,* 35 S. W. (2d) (Tex. Com. App.) 128; *Sovereign Camp, etc. v. Boden,* 117 Tex. 229, 1 S. W. (2d) 256, 61 A. L. R. 682.

The reasonable time rule has been followed by some courts, but we prefer not to follow it, and expressly overrule the *Warner* case, *supra,* in so far as it is inconsistent with this opinion, inasmuch as the adoption of that rule would eliminate the application of the statute of limitations.

We are of the opinion, however, that the rule recognized by the great weight of authority, namely, that no cause of action accrues until the expiration of the seven-year period, when proof of death can be made, where the fact of the death of the insured must be established by the aid of the presumption arising from his unexplained absence for seven years, should be adhered to. Under that rule, an action commenced within the six-year period, following the expiration of the seven-year presumption period, is timely.

We conclude the judgment should be affirmed. It is so ordered.

STEINERT, C. J., HOLCOMB, BEALS, MAIN, MILLARD, GERAGHTY, and ROBINSON, JJ., concur.

BLAKE, J. (concurring in the result)—I concur in the result. I do not acquiesce in overruling *Warner v. Modern Woodmen of America,* 124 Wash. 252, 214 Pac.

161, 34 A. L. R. 87, for I think it states the better rule, namely, that the action must be brought within a reasonable time after the expiration of the seven-year period of absence.

