[No. 39895-4-I. Division One. December 8, 1997.]

TERRANCE W. O'NEIL, *Appellants*, v. ESTATE OF TERRI L. MURTHA, ET AL., *Respondents*.

*Allan W. Munro*, for appellant.

*Bert L. Metzger, Jr.*, of *Jonson & Jonson, P.S.*, for respondents.

WEBSTER, J. — Terri L. Murtha made an oral agreement with Terrance O'Neil to repay him a $15,695.39 loan when she was "able" to do so. O'Neil seeks repayment of the loan with interest from Murtha's estate, and the sole question is whether his claim is barred by the statute of limitations under RCW 4.16.080(3). We adopt the majority view and hold that where a debtor promises to pay "when able," such cause of action accrues when the debtor in fact becomes financially able to pay, regardless of whether the creditor was aware of the debtor's ability to pay. We therefore conclude that the trial court did not err in finding O'Neil's claim time-barred.

## FACTS

The following findings by the trial court are undisputed:[1]

On February 2, 1990, Terrance O'Neil loaned Terri L. Murtha $15,695.39. Murtha agreed to repay the loan when she was "able to pay" it. On that same date, Murtha's real property located in Seattle was redeemed from foreclosure. She had an equity of approximately $90,000 in that house; it was worth approximately $100,000. At the same time,

[1]These facts are thus verities on appeal. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

Murtha also owned another piece of real property, a rental property. Murtha had an equity of approximately $60,000 in the rental property; it was valued between $75,000 on the low end and $82,000 on the high end. At the time of the loan, O'Neil was aware that Murtha owned these two pieces of real property.

In addition to disability income and rent from her rental property, Murtha received wages averaging $32,800 per year during the years 1990, 1991, and 1992. Between 1990 and 1995, O'Neil and Clifton Miller, another friend of Murtha, assisted Murtha in her financial matters, which were often in a state of disarray. They updated her book-keeping records and sorted through her bills so that she could pay them. O'Neil occasionally provided Murtha with money so that she could make her payments. At that time, O'Neil did not know that Murtha had received $32,848.28 from her grandfather's estate between August 1990 and October 1990. The trial court found that she was in fact able to pay the loan before May 1, 1992.

Murtha died on May 25, 1995 without having made any payments to O'Neil for the loan. On September 19, 1995, O'Neil filed a creditor's claim with Murtha's estate ("Estate"); such claim was rejected. On November 9, 1995, O'Neil filed a complaint against the Estate for the recovery of $26,511.03 plus interest. The trial court dismissed the suit with prejudice, finding that O'Neil's claim was time-barred by the statute of limitations.

## DISCUSSION

### A. Accrual of a Cause of Action Where the Debtor Promises to Pay "When Able"

■ In Washington, the statute of limitations is three years for an express or implied contract which is not in writing and does not arise out of any written instrument. RCW 4.16.080(3). At issue here is when this statute of limitations period began to run.

■ A cause of action accrues and the statute of limita-

tions begins to run when a party has the right to apply to a court for relief. *Eckert v. Skagit Corp.*, 20 Wn. App. 849, 851, 583 P.2d 1239 (1978). The question therefore becomes: When does a cause of action accrue where the debtor has agreed to repay a loan when she is "able" to do so?

### 1. *The Majority Rule vs. the Minority Rule*

As both parties have indicated, this precise question appears to be one of first impression under Washington law. There is a split among state courts that have encountered this issue. *See In re Estate of Page v. Litzenburg*, 177 Ariz. 84, 90-91, 865 P.2d 128 (1993) (discussing the two distinct lines of cases); *In re Estate of Buckingham*, 9 Ohio App. 2d 305, 307-08, 224 N.E.2d 383 (1967); *see also* C.S. Patrinelis, Annotation, *When Statute of Limitations Commences to Run Against Promise to Pay Debt "When Able," "When Convenient," or the Like*, 28 A.L.R.2D 786, 788 (1953).

Under the majority rule, a promise to pay "when able" is a conditional promise and thus no cause of action exists until an actual ability to pay has been shown, regardless of whether the creditor is aware of the debtor's ability to pay. Patrinelis, *supra*, at 788-90; *see also Richardson v. Brecker*, 7 Colo. 58, 59-60, 1 P. 433 (1883); *Work v. Beach*, 13 N.Y.S. 678, 679-80 (1891) (discussing *Tebo v. Robinson*, 100 N.Y. 27, 2 N.E. 383 (1885)); *Van Buskirk v. Kuhns*, 164 Cal. 472, 474, 129 P. 587 (1913); *In re Estate of Clover*, 171 Kan. 697, 701-02, 237 P.2d 391 (1951); *Pitts v. Wetzel*, 498 S.W.2d 27, 29 (Tex. Civ. App. 1973); *In re Estate of Page*, 177 Ariz. at 90-91.

Under the minority rule, however, a promise to pay "when able" is an absolute promise, and thus a cause of action exists within a "reasonable time" after the promise is made regardless of whether the debtor has such ability to pay, and the limitations period does not commence until the expiration of such reasonable time. Patrinelis, *supra*, at 788, 790-91; *see Hurtt v. Steven*, 333 Ill. App. 181, 186-87, 77 N.E.2d 204 (1947).

Here, the trial court evidently followed the majority rule, finding that:

A loan which is to be repaid when the debtor "is able" to do so is a promise to pay when the debtor has the financial means to pay the debt. The statute of limitations begins to run only from the time when the debtor has the financial means to pay the debt.

Therefore, the statute of limitations began to run on the Loan when Murtha became able to pay the Loan.

The statute of limitations began to run on the Loan . . . without regard to whether O'Neil had knowledge of Murtha's ability to repay the Loan.

O'Neil contends that the trial court erred in following the majority rule, and that the court instead should have determined a "reasonable time" after which the statute of limitations period would commence under the minority rule.

## 2. *The Discovery Rule*

O'Neil argues that the minority rule should be adopted because the majority rule may encourage debtors to conceal their financial capabilities, and is therefore unfair to the creditor, as the creditor would not know when the cause of action accrued and when the limitations period began to run. However, O'Neil fails to show how adoption of the minority rule addresses his concerns. The minority rule does not require that the limitations period commence only where the creditor discovers or should discover the debtor's ability to repay; the minority rule establishes only a "reasonable time" before commencing the limitations period. *See Hurtt*, 333 Ill. App. at 186-87.

O'Neil therefore appears to diverge from both the majority and minority views in suggesting that we import the "discovery rule" into this branch of law. That is, he urges this court to adopt a rule whereby the statute of limita-

tions does not begin to run against an action until the creditor discovers, or should discover, the debtor's ability to pay in cases where the debtor promises to pay "when able." However, O'Neil provides no legal authority for this alternate theory. Instead, he directs us to our recent decision in *Crisman v. Crisman*, 85 Wn. App. 15, 931 P.2d 163, *review denied*, 132 Wn.2d 1008 (1997).

■ There, we applied the discovery rule, concluding that the statute of limitations had not commenced against a jewelry store owner's conversion claim until she learned that the defendants had transferred corporate funds for their own benefit. *Id.* at 20-23. The discovery rule "operates to toll the date of accrual until the plaintiff knows or, through the exercise of due diligence, should have known all the facts necessary to establish a legal claim." *Id.* at 20. *Crisman* is inapposite, however, because, as we indicated, the discovery rule applies to two categories of cases: (1) cases of fraudulent concealment;[2] and (2) cases where the nature of the plaintiff's injury makes it difficult for the plaintiff to learn the factual elements giving rise to the cause of action within the limitations period. *Id.* at 20-21. O'Neil's case falls into neither category.

### 3. *Statutes of Limitations*

O'Neil further argues that the minority rule is consistent with "closely related Washington law," citing *Pepper & Tanner, Inc. v. KEDO, Inc.*, 13 Wn. App. 433, 435, 535 P.2d 857 (1975) ("Where a contract is silent as to duration or states time for performance in general and indefinite terms, the court is to impose a reasonable time."). However, *Pepper & Tanner* involves the interpretation of contract terms, rather than the determination of when a cause of action

---

[2]We note that O'Neil does not claim fraudulent concealment in this case. *See Crisman v. Crisman*, 85 Wn. App. 15, 21, 931 P.2d 163, *review denied*, 132 Wn.2d 1008 (1997) (a plaintiff alleging fraudulent concealment may affirmatively plead and prove the nine elements of fraud or show that the defendant breached an affirmative duty to disclose a material fact).

accrues for the purpose of statutes of limitations. That is, O'Neil's situation does not involve an interpretation of a contract term because it is undisputed that Murtha was able to pay the loan prior to May 1, 1992. Instead, O'Neil's situation involves the sole question of the commencement of the limitations period which should be considered within the context of principles governing statutes of limitations law, rather than within the context of principles governing contracts law.

■ The statute of limitations "is not an unconscionable defense, but a declaration of legislative policy to be respected by the courts." *Davis v. Rogers*, 128 Wash. 231, 235, 222 P. 499 (1924) (citing *Arthur & Co. v. Burke*, 83 Wash. 690, 693, 145 P. 974 (1915)). It serves to shield defendants and the judicial system from stale claims. *Crisman*, 85 Wn. App. at 19. On a pragmatic level, "[w]hen plaintiffs sleep on their rights, evidence may be lost and witnesses' memories may fade." *Id.* On a more fundamental level, the Supreme Court has stated:

> It is easy to argue, relative to any statute of limitations as applied to a particular case, that it works injustice. But it must be remembered that these are statutes of repose, and, as said in *Thomas v. Richter* [88 Wash. 451, 456, 153 P. 333 (1915)], "It is believed that it is better for the public that some rights be lost than that stale litigation be permitted."

*Golden Eagle Mining Co. v. Imperator-Quilp Co.*, 93 Wash. 692, 696, 161 P. 848 (1916).

Principles regarding statutes of limitations in Washington are instructive for resolving the issue at hand. For instance, traditionally, a statute of limitations begins to run upon the accrual of a cause of action regardless of the plaintiff's knowledge of the right to sue. *Id.* at 694. Moreover, exceptions to statutes of limitations "are strictly construed, and cannot be enlarged from considerations of apparent hardship or inconvenience." *Rushlight v. McLain*, 28 Wn.2d 189, 199, 182 P.2d 62 (1947) (quoting 34 Am. Jur. § 189). That is, courts "will not, as a general rule, read into

statutes of limitation an exception which has not been embodied therein, however reasonable such exception may seem, even though the exception would be an equitable one." *Id.* at 199-200 (quoting 34 AM. JUR. § 186).

Finally, our Supreme Court long ago overruled in part its decision in *Warner v. Modern Woodmen of Am.*, 124 Wash. 252, 214 P. 161 (1923), where it had held that a beneficiary was afforded a "reasonable time" after the lapse of seven years (the amount of time necessary to establish the presumption of death for an insured) to file a claim of death and bring an action against an insurance policy. *Howard v. Equitable Life Assur. Soc'y of U.S.*, 197 Wash. 230, 239-41, 85 P.2d 253 (1938). In overruling *Warner*, the Court stated "[t]he reasonable time rule has been followed by some courts, but we prefer not to follow it . . . inasmuch as the adoption of that rule would eliminate the application of the statute of limitations." *Id.* at 241. The Court found that a cause of action for a contract claim accrued upon the expiration of the seven-year period necessary to establish a presumption of death. *Id.* at 240-41.

■ We find that the majority rule with regard to promises to pay "when able" comports with general principles governing our statutes of limitations law. The trial court therefore did not err in adopting it.

## B. A Creditor's Diligence Under the Majority Rule

■ O'Neil also challenges the trial court's finding that he was not diligent in determining whether Murtha was financially able to repay the loan. An appellate court limits its review to whether a trial court's findings are supported by substantial evidence and, if so, whether such findings support the conclusions of law. *Goodman v. Darden*, 100 Wn.2d 476, 483, 670 P.2d 648 (1983).

■ Under the majority rule, the creditor's awareness of the debtor's ability to pay is irrelevant to the commencement of the limitations period because "the creditor, by acquiescing in the condition [of the debtor to pay 'when able'], *binds*

*himself to diligence and discovery of the occurrence agreed upon."* Patrinelis, *supra*, at 791-92 (emphasis added).[3] Here, substantial evidence supports the trial court's finding that O'Neil was not diligent in informing himself of Murtha's financial status.

First, although O'Neil observed that Murtha often received creditors' notices and her bank account was constantly at a nearly zero balance, he received two checks totaling $2,610 from the joint account Murtha held with her mother, O'Donnell. He received one check in September 1990 and the other in May 1991. O'Neil seems to argue on appeal that he could not have known that the $2,610 came from Murtha's funds because the checks were signed by O'Donnell, mailed by O'Donnell, and listed O'Donnell's mailing address (rather than Murtha's). However, at trial, O'Neil himself testified that when he received those checks, he thought he was receiving "Terri [Murtha]'s money." Even if O'Neil did not know that the checks came from Murtha's funds, the checks revealed that Murtha had another bank account—the joint account with O'Donnell—as far back as September 1990.

Second, it is undisputed that O'Neil knew that Murtha owned two pieces of real property at the time of the loan. O'Neil presents the logical argument that he did not intend for Murtha to sell her property in order to repay the loan; otherwise, why would he have loaned her the money in the first place, particularly given the fact that the loan was to

---

[3]As O'Neil indicates, the cases following the majority rule do not seem to examine a creditor's diligence. However, the English cases from which this rule originates apparently discuss the creditor's burden to "watch for the arrival of [the debtor's ability to pay]." C.S. Patrinelis, Annotation, *When Statute of Limitations Commences to Run Against Promise to Pay Debt "When Able," "When Convenient," or the Like*, 28 A.L.R.2D 786, 792 (1953).

Thus, because the majority rule expressly disregards the creditor's awareness of the debtor's ability to pay, this suggests that the creditor must exercise diligence in ascertaining the debtor's financial status so that the claim is brought within the limitations period.

But the creditor's failure to exercise diligence is not fatal to his claim; rather, the claim hinges upon the debtor's actual ability to pay. Here, the trial court's conclusions are clearly based upon commencing the limitations period at the time Murtha was able to pay; not upon the finding that O'Neil was not diligent in informing himself of Murtha's financial status.

redeem one of her properties? Indeed, O'Neil testified that he was not "looking to Terri Murtha to repay [him] by selling one or the other of those houses."

However, neither the majority rule nor the minority rule looks to the creditor's intent. O'Neil's intent as to the method of repayment is therefore irrelevant in examining either his diligence or Murtha's ability to pay. It remains undisputed that from the time the loan was made until the time of her death, Murtha owned two parcels of real estate which apparently escaped either sale or foreclosure even throughout her periods of overdue credit notices and utility shut-off notices. It seems that if O'Neil had been diligent in learning about Murtha's financial status, he may have discovered that there were sources of funds available to her other than her meager bank account.

Thus, we conclude that there is substantial evidence to support the trial court's finding that O'Neil "was not diligent in informing himself about Murtha's financial condition and her ability to pay the Loan in accordance with its terms." As shown above, although this finding is not critical to the outcome, it nevertheless supports the trial court's conclusion that under the majority rule, the statute of limitations against O'Neil began to run when Murtha possessed the actual ability to repay him, regardless of whether he was aware of her financial status.

## C. O'Neil's Claim

Applying the majority rule to O'Neil's situation, we find that his claim is clearly time-barred. It is undisputed that Murtha agreed to repay the loan when she was "able," and that she never repaid any part of the loan to O'Neil. It is also undisputed that Murtha "in fact was able to pay the Loan before May 1, 1992" and that O'Neil did not commence his suit until November 9, 1995. As the majority rule dictates, in cases where a debtor promises to pay "when able," a cause of action accrues upon satisfaction of such condition; that is, at the time when the debtor is in

fact financially able to repay the loan, regardless of whether the creditor is aware of such ability. *See In re Clover's Estate*, 171 Kan. at 701-03. Thus, O'Neil's cause of action accrued before May 1, 1992, and his claim of November 9, 1995 came too late under RCW 4.16.080(3). The trial court did not err in finding O'Neil's claim barred by the statute of limitations.

We affirm.

BECKER and COX, JJ., concur.

Review denied at 135 Wn.2d 1003 (1998).