[No. 42505-6-I.    Division One.    January 3, 2000.]

KARIL NELSON, *as Special Personal Representative,*
*Respondent,* v. DAVID C. SCHUBERT, *Appellant.*

*David C. Schubert*, pro se.
*Royce A. Ferguson, Jr.*, for respondent.

ELLINGTON, J. — Julianna Schubert was last seen alive on June 30, 1989. Her body has never been found. In a wrongful death action filed by her mother in 1997, proof of Julianna's death depended upon the legal presumption of death that arises seven years after disappearance. We must decide what triggers the statute of limitations where there is no proof of death, and whether circumstantial evidence supported the jury's finding that Julianna's husband caused her death. We hold that the three-year statute of limitations for wrongful death actions was tolled until Nelson could present proof of Julianna's death by way of legal presumption, and that sufficient circumstantial evidence supported the jury's findings that Julianna had died and that her husband David Schubert caused her death. We reject Schubert's remaining claims, and affirm the verdict.

## FACTS

### Background

Julianna Schubert (Julianna), the wife of David Schubert (Schubert) and the daughter of Karil Nelson (Nelson) disappeared on or about June 30, 1989. A little more than seven

years later, Schubert filed a motion seeking to have her declared dead. On September 23, 1996, the court granted the motion and declared Julianna deceased. The following day Schubert filed a petition for an order to probate Julianna's will and appoint him personal representative.

Karil Nelson objected, alleging Schubert "is the slayer of Julianna M. Schubert and otherwise disqualified to serve, administer and inherit." The trial court named Nelson as special personal representative to evaluate whether or not the estate should file a wrongful death action against Schubert and pursue the action if appropriate. On January 16, 1997, Nelson, as special personal representative of Julianna's estate, filed a wrongful death action against Schubert, and sought to have Schubert declared the slayer of Julianna.

Schubert moved to dismiss the wrongful death suit before and during trial on the grounds that it was barred by the three-year statute of limitations. On each occasion, the trial court rejected Schubert's motion on the basis that the limitations period did not begin to run until Julianna's death could be established by presumption, seven years after she disappeared.

Trial Testimony[1]

The Schuberts lived on property comprising some 15 to 20 acres. Before Julianna's disappearance, Schubert had reported that he and his wife were having marital problems. Julianna, too, had talked with friends about plans for a marriage dissolution. She discussed getting an apartment for herself and her sons, and may have already been looking for a new place to live.

One witness testified that about four to six weeks before Julianna disappeared, Schubert stated "he would kill Julianna to get piece [sic] of mind." Another witness testi-

---

[1]Schubert filed a narrative report of proceedings pursuant to RAP 9.3. Although the report is largely incomplete and its format is problematic, the respondent did not object to its form or content. The facts here are gleaned from this report.

fied that Schubert once told him "only stupid people get caught, and did things that got them caught."

Julianna began working for Everett Steel in June of 1989. Her employer, Sam Nelson (Sam), last saw her on Friday, June 30, 1989. On Monday, July 3, Schubert called Sam to say that Julianna would not be working that day. Two days later, Schubert called Sam and said Julianna was in Colorado with a friend and would not be returning to work. At some point, Schubert went to Julianna's office to pick up her personal belongings and return her post office box key. Schubert asked Sam about "her check," but Sam refused to give the check to him. Schubert also called the employment agency that placed Julianna at Everett Steel and requested "a refund due to [a] 60-day clause"; the money was returned.

During the first few weeks following Julianna's disappearance, Schubert gave various conflicting accounts about her whereabouts. Besides telling Sam that Julianna was in Colorado, Schubert told others she was "on vacation," in Chicago, in New York, "back east," and in Arizona with another man.

Julianna's mother testified she spoke with Schubert by telephone on July 4, 1989, and he told her Julianna was back east. Almost three weeks later, on July 24, 1989, Schubert told her Julianna was missing, that she had not taken her car or clothes, but might have taken her purse or $500. Nelson testified she called the police, who advised her that Schubert had not filed a missing persons report.

Schubert testified he had advanced degrees in insurance and served as a reserve police officer. He said he and Julianna were having marital problems, and were in the process of a "do-it-yourself" divorce. The narrative report continues:

> [Schubert] indicated that he obtained help [with the divorce] from their family attorney . . . because of a new law concerning having a parenting plan. When [Julianna] found out that he had confided in [the attorney] she blew up indicating that her mom had the same attorney and did not want to involve

her. She became very emotional and threw the cars [sic] keys at him saying its [sic] your car, your home etc. I hate it I hate it [sic]. [Schubert] indicated that he left her downstairs and went up to be with the boys . . . . He woke up the next day only to find the bed had not been slept in. He was concerned but knowing her temper assumed that she had left to cool down. He indicated that he had received a phone call from her in the early morning on July 4 and indicated that she wasn't happy with her life but needed time to sort things out. She wanted me to call her work and explain the situation and pick up her stuff and returned [sic] the mailbox key. That was the last time I ever heard from her.

Schubert also said he hired a private investigator to find Julianna and had spent "significant funds" attempting to locate her.

The jury found that Julianna was deceased, that the probable date of her death was June 30, 1989, that Schubert wrongfully caused her death, and that Schubert was her slayer. The jury also returned a special damages verdict against Schubert, awarding the estate $55,000 in past economic damages and $78,000 in future economic damages, as well as $800,000 each to Andre and Nick for noneconomic damages.

## DISCUSSION

On appeal, Schubert argues that: (1) the statute of limitations barred Nelson's claim; (2) the jury should not have been permitted to establish Julianna's death by presumption; (3) circumstantial evidence was insufficient to prove Julianna's death; and (4) the trial court erred in a variety of evidentiary and procedural rulings, and in instructing the jury.

### 1. Statute of Limitations

■ Wrongful death actions are governed by a three-year statute of limitations. RCW 4.16.080. A wrongful death action must be brought within three years of the date when

the action accrues.[2] A cause of action accrues and the statute of limitations begins to run when a party has the right to apply to a court for relief.[3]

Schubert asserts that the three-year statute of limitations barred the wrongful death action because Nelson could have commenced the lawsuit within three years of the date Julianna disappeared (i.e., by June 30, 1992), or when Nelson believed and/or discovered Julianna had died. Nelson responds that the limitations period did not begin to run until she could prove Julianna's death, which in this case could be established only by presumption, and therefore the statute began to run when the seven-year presumption applied.

In Washington, the presumption of death attaches where a party has been absent for seven years without tidings of his or her existence.[4] The law presumes life during the first seven years of absence.

No Washington court has considered whether the statute of limitations bars a wrongful death action when proof of death itself is at issue. But a similar question has been considered in the context of insurance claims. In *Howard v. Equitable Life Assurance Society*,[5] the plaintiff sued an insurance company to recover proceeds from her missing husband's insurance policy. The plaintiff's husband, who had been missing for seven years, had either fallen or thrown himself from a ferry boat, and his body was never recovered. The insurance company asserted that the cause of action accrued on the day plaintiff claimed her husband had died, so her claim was barred by the applicable six-year

[2]*See* RCW 4.16.005.

[3]*O'Neil v. Estate of Murtha*, 89 Wn. App. 67, 69-70, 947 P.2d 1252 (1997); *see also White v. Johns-Manville Corp.*, 103 Wn.2d 344, 351, 693 P.2d 687, 49 A.L.R.4TH 955 (1985) (cause of action "accrues" when plaintiff discovers or reasonably should have discovered all of essential elements of cause of action).

[4]*Ireland v. Metropolitan Life Ins. Co.*, 184 Wash. 1, 4, 49 P.2d 469 (1935). The probate code also permits distribution of an estate after seven years. RCW 11.80.100.

[5]197 Wash. 230, 85 P.2d 253, 119 A.L.R. 1302 (1938).

statute of limitations. The court rejected the company's argument, and determined that a cause of action accrues at the moment the plaintiff has a legal right to maintain an action to enforce it. The court stated:

> It is evident that respondent did not have the legal right or ability to maintain an action upon the policy issued to her husband until the seven-year period had expired which enabled her to prove her husband's death. Prior to that time she owned a cause of action, but it had not ripened into one that could be enforced.[6]

The *Howard* court thus held that because the plaintiff could not prove her husband's death without the aid of the presumption of death arising from his unexplained absence for seven years, her action was not barred by the statute of limitations.

We find the *Howard* analysis persuasive. Here, as in *Howard*, Julianna's death could not be established directly. There was no body and no evidence of death. Until he himself sought to rely on the presumption and probate her estate, Schubert himself had always maintained that his wife was, in fact, alive. Nelson's cause of action thus could not accrue without some proof of death, which in this case took the form of the passage of time. Once Nelson could establish Julianna's death by presumption, her cause of action "ripened" into one that could be enforced. The trial court did not err in denying Schubert's motion to dismiss.

We also find instructive a case in which the Missouri Court of Appeals addressed the statute of limitations in the context of wrongful death claims where proof of death was at issue. *Howell v. Murphy*,[7] involved a wrongful death action filed in 1989 against a defendant who, one year earlier, had pleaded guilty to murdering three men between 1984 and 1985. Each of the plaintiffs presented evidence that they were unaware of the victims' deaths until 1988. The appellate court rejected the defendant's assertion that the

---

[6]*Howard*, 197 Wash. at 240.

[7]844 S.W.2d 42 (Mo. Ct. App. 1992).

statute of limitations barred the plaintiffs' claims, reasoning that such a bar would "suggest[ ] that any tortfeasor can escape all civil liability merely by concealing his evil deeds for three years."[8] The court continued:

> The victims' families had no choice but to wait before asserting this action. The law will not permit a missing person to be presumed dead until he or she has been missing for at least five years. They could not have asserted any action within that five year period until they had facts to overcome the law's presumption of life.[9]

Given the defendant's concealment of the bodies and the law's presumption that the victims were missing and not dead, the court held the limitations period was tolled until the plaintiffs could, by reasonable diligence, ascertain that they had an action. The statute of limitations thus did not begin to run until the authorities found the body parts of one victim, and the defendant pleaded guilty to murdering the others.[10]

Schubert relies upon two cases, neither of which is helpful here. First, Schubert contends that Nelson should have filed her wrongful death claim within three years of Julianna's death, as the court required in *Dodson v. Continental Can Co.*[11] But in *Dodson*, there was no dispute about the date of death from which to measure the limitations period.

Second, Schubert cites *Allen v. State*[12] for the proposition that Nelson should have commenced her action within three years of the time *she believed* Julianna had died. In

---

[8]*Id.* at 47.

[9]*Id.* (internal citation omitted).

[10]*Id.*

[11]159 Wash. 589, 294 P. 265 (1930). In *Dodson*, the personal representative of the decedent's estate was appointed more than three years after the decedent's death. The court barred the plaintiff's wrongful death claim on the basis that the limitations period started to run on the date of the decedent's death rather than the date the personal representative was appointed.

[12]118 Wn.2d 753, 826 P.2d 200 (1992).

*Allen*, the plaintiff sued the State in October 1985 for the wrongful death of her husband who had been murdered in 1979 by two parolees. At the time of the murder, the identities of the parolees were not known, but they were later identified, tried, and convicted in May 1982. The plaintiff did not learn of the convictions, however, because she maintained minimal contact with the police, and family members postponed showing her newspaper articles about the trial. The court barred her wrongful death claim, holding that she failed to exercise due diligence in discovering the facts underlying her husband's death.[13]

Schubert's reliance on *Allen* is misplaced. Any suspicions Nelson may have had about Schubert's involvement in Julianna's disappearance did not rise to the level necessary to prove that she had discovered Julianna's death. Suspicion is inadequate to support a lawsuit.[14] And unlike the plaintiff in *Allen*, Nelson did not fail to exercise due diligence. As Schubert's attorney repeatedly pointed out, there was no actual evidence of death. Without such evidence, Nelson could not make the requisite "discovery" to begin the running of the limitations period and was forced to rely on the presumption. Her belief that Schubert had killed her daughter had no evidentiary value, and no effect on the statute of repose.

■ We therefore hold that where there is no proof of death, the three-year statute of limitations for wrongful death actions is tolled until the plaintiff can present evidence of death by way of the presumption created in our statutes and common law.

## 2. Evidentiary Value of Presumption of Death

■ Schubert argues that the trial court erred by permitting Nelson to establish Julianna's death by presumption. The jury instruction relating to the presumption of death stated:

---

[13]*Allen*, 118 Wn.2d at 759.

[14]*See* CR 11.

Because Julianna Schubert has been absent for seven (7) years, the law allows you to presume that Julianna Schubert is deceased, unless evidence believed by you shows that Julianna Schubert is not deceased. If there is such evidence, you will disregard the presumption.

The record does not reveal whether Schubert explicitly challenged this instruction below, but even if he did, the trial court did not err.[15] The instruction was legally correct and created a rebuttable presumption, which permits, but does not require, the trier of fact to find the presumed fact given the existence of the proven fact.[16] The presumption of death arising from seven years' unexplained absence is always rebuttable.[17] Jurors are the "final arbiters as to the weight of the evidence necessary to overcome the presumption."[18] The jury instruction was proper.

### 3. Substantial Evidence of Julianna's Death

■ Schubert argues that only direct, not circumstantial, evidence is permissible to prove wrongful death. Schubert's contention is misplaced. Washington law permits death, like any other fact, to be established by circumstantial evidence.[19]

■ Alternatively, Schubert contends that there was insufficient circumstantial evidence that Julianna had actually died or that he was the direct cause of her death. An appellate court may overturn a jury's verdict only if the

---

[15]We also reject Schubert's challenge to the issuance of presumptive death certificates based on circumstantial evidence. The attorney general opinion to which he refers clearly states that courts may properly consider circumstantial evidence of death in wrongful death claims. 1980 Op. Att'y Gen. No. 15, at 2-3 (citing *Adler v. University Boat Mart, Inc.*, 63 Wn.2d 334, 387 P.2d 509 (1963)). And Schubert himself sought and obtained a declaration of her death for probate purposes. (The estoppel effect, if any, of his successful request for such a court order has not been raised here.)

[16]*State v. Davis*, 7 Wn. App. 38, 39, 497 P.2d 952 (1972).

[17]*Shaw v. Prudential Ins. Co. of Am.*, 158 Wash. 43, 45, 290 P. 694 (1930).

[18]*Burrier v. Mutual Life Ins. Co.*, 63 Wn.2d 266, 281, 387 P.2d 58 (1963).

[19]*Adler*, 63 Wn.2d 334, 337 (citations omitted).

verdict was not supported by substantial evidence.[20] The court may not substitute its judgment for that of the jury as long as there is evidence that, if believed, would support the verdict.[21] The record must contain a sufficient quantity of evidence to persuade a rational, fair-minded person of the truth of the premises in question.[22]

Substantial circumstantial evidence supports the jury's finding that Julianna had died and that Schubert wrongfully caused her death. Julianna had been missing for more than seven years. Within the month before her disappearance, she and Schubert had been contemplating divorce. She had found a job and was considering moving into her own apartment with her sons. Schubert reportedly told a friend that "he would kill Julianna to get piece [sic] of mind." After her disappearance, Schubert went to Julianna's office, gathered her personal effects, and attempted to collect a check owed to her. He neither reported the disappearance to her mother nor filed a missing person's report until almost three weeks later. When asked about her whereabouts, Schubert told various individuals that she was in Chicago, New York, Colorado, Arizona, "back east," and "on vacation." The brief narrative report does not contain other evidence apparently also presented to the jury. Thus the record is inadequate to allow a thorough review for the substantive evidence challenge. Schubert has the burden of presenting an adequate record, and bears the consequences of our inability to conduct a full review, which is rejection of his challenge.[23] In any event, based on the record before us, it appears clear that substantial evidence supported the jury's verdict.

Affirmed.

The remainder of this opinion has no precedential value

---

[20]*Bulman v. Safeway, Inc.*, 96 Wn. App. 194, 199, 978 P.2d 568 (1999).

[21]*Id.* at 199.

[22]*Id.*

[23]*See State ex rel. Campbell v. Cook*, 86 Wn. App. 761, 768-69, 938 P.2d 345 (1997) (court need not consider alleged error if complete record is not provided).

and will be filed according to the rules of the court. *See* RCW 2.06.040; RAP 10.4(h).

KENNEDY, C.J., and COX, J., concur.