# In the Iowa Supreme Court

No. 25–0501

Submitted April 15, 2026—Filed May 22, 2026

**Kindle Schneider,** as temporary administrator for the **Estate of Cynthia Miles,** deceased,

Appellee,

vs.

**Tarrah Holliday, Amy Phillips,** and **Zion Integrated Behavioral Health Services, Inc.,** an Iowa nonprofit corporation d/b/a **Harbor Point CSRS** and d/b/a **Southwest Iowa Mental Health Center,**

Appellants.

Appeal from the Iowa District Court for Cass County, Eric J. Nelson, judge.

The defendants appeal from a district court ruling denying their motion for summary judgment on the statute of limitations. **Affirmed.**

Waterman, J., delivered the opinion of the court, in which all participating justices joined. Christensen, C.J., took no part in the consideration or decision of the case.

Stuart J. Cochrane and Brian L. Yung of Johnson, Mulholland, Cochrane, Cochrane, Yung & Engler, P.L.C., Fort Dodge, for appellants.

Andrea A. Klinetobe of Carlson & Blakeman, LLP, Omaha, Nebraska, for appellee.

**Waterman, Justice.**

When Cynthia Miles disappeared from a psychiatric treatment facility without a trace, her daughter, Kindle Schneider, petitioned the district court for a judicial determination that Miles was deceased. After the court made a finding that Miles was presumed dead, Schneider, as administrator of Miles's estate, filed this civil action for wrongful death against various healthcare providers. The defendants moved for summary judgment, arguing that Schneider had moved too slowly: the statute of limitations had run. The district court denied the motion, ruling that the two-year clock began running upon the judicial declaration of death rather than when Miles went missing or any interim date. We granted the defendants' application for interlocutory appeal and retained the case. On our review, we determine that the wrongful-death action was timely filed for the reasons explained below.

## I. Factual and Procedural Background.

The parties largely agree on the facts. In 2021, Miles was sixty-four years old. She suffered from acute psychosis, including auditory hallucinations that, at times, instructed her to end her own life. To combat these delusions, Miles took various prescription medications and would seek skilled medical intervention when suffering a mental health crisis. Just such a crisis occurred in July, when Miles, attempting suicide, overdosed on her prescription medication. The Nebraska Medical Center (NMC) treated Miles as an inpatient for nearly a month.

On August 10, NMC released Miles into the care of the Salvation Army Mental Health Respite Services. Nine days later, Miles fled from the Salvation Army and was missing for several days. Her family filed a missing person's

report, but before police could locate Miles, a stranger found her and contacted her family. Miles returned to NMC as an inpatient.

A few weeks later, Miles again escaped from care. Another stranger found her wandering at night in a medical gown. Miles went back to NMC, where she was placed in a locked psychiatric unit.

On November 4, NMC transferred Miles to a locked memory care unit at Allen Place, a local assisted living community. Miles's medical records indicated that she was a flight risk and that she had attempted suicide multiple times. Five days after Allen Place admitted Miles, she told staff that she was suffering from deep depression, delusional thoughts, and suicidal ideation. They transferred her to the emergency room of Cass County Memorial Hospital. That same day, the hospital placed Miles under the care of Harbor Point Crisis Stabilization Residential Services. Harbor Point is an unlocked mental health facility.

The next day, Harbor Point staff found Miles afflicted by severe depression, anxiety, and visual and auditory hallucinations. Miles stated that one of her hallucinations warned her to "get out [of Harbor Point] or she would destroy the world." She also described suicidal and homicidal ideation.

On the following day, November 11, after nightfall and in a rainstorm, Miles escaped from Harbor Point. She took with her only a light jacket and a windbreaker. Although the facility quickly noticed Miles's absence, staff could not locate her. No one reported Miles missing until four days later. Temperatures during that time never exceeded thirty-six degrees and dropped as low as twenty-eight degrees. Despite a diligent search, Miles was never found.

On June 8, 2022, Miles's family petitioned the Iowa District Court for Pottawattamie County to judicially determine that Miles was dead. On

August 29, after a jury trial, the court determined that Miles had died, and it issued a certificate of presumed death.

On November 9, 2023, Schneider filed a lawsuit asserting that the defendants—among others not party to this appeal—were negligent in caring for Miles and caused her death. The defendants answered the petition, denying that they were negligent, then moved for summary judgment, arguing that Schneider had not filed a legally sufficient certificate of merit affidavit as required by Iowa Code section 147.140 (2023). Schneider voluntarily dismissed the action without prejudice.

Schneider filed the present wrongful-death action—naming the same defendants—on August 28, 2024, just within two years of the judicial declaration of Miles's death. The defendants moved for summary judgment, this time arguing that the action was time-barred because more than two years had passed since Schneider first "knew, or through the use of reasonable diligence should have known[,] [of] the existence of the injury or death for which damages are sought." (Quoting *id.* § 614.1(9)(*a*).) The district court granted in part and denied in part the defendants' motion. That ruling limited Schneider's loss of consortium claim[1] but determined that the two-year statute of limitations on the estate's wrongful-death claim had not begun running until the date that the district court issued Miles's certificate of presumptive death. The defendants filed a motion to reconsider. The district court denied the motion, writing:

> The wrinkle in this case as it pertains to the statute of limitations is the fact that no one knows when Cynthia died.

---

[1]Although Schneider did not expressly plead a claim for loss of consortium, the district court perceived that such a claim was possible. The district court ruled that any such claim was limited to the time after Miles's death. In other words, it held that the statute of limitations barred any loss of consortium claim for the time between Miles's escape from Harbor Point and the judicial determination of presumptive death. Schneider does not challenge this ruling on appeal, and we do not address it.

Furthermore, no one knows for certain that Cynthia is, as a factual matter, actually dead. Defendants assert that Plaintiff should have known that Cynthia was dead either soon after Cynthia's elopement or when Plaintiff filed the presumption of death action on June 8, 2022. However, the Defendants do not assert any facts that Plaintiff would have available to her that would have indicated that Cynthia was dead. The Court does not think the mere fact that Cynthia had eloped and was unable to be found is sufficient knowledge to put Plaintiff on inquiry notice of Cynthia's death, particularly when there was a history of Cynthia eloping and later being found.

We granted the defendants' application for interlocutory appeal and retained the case.

## II. Standard of Review.

"We review summary judgment rulings for correction of errors at law." *Deeds v. City of Marion*, 914 N.W.2d 330, 339 (Iowa 2018).

## III. Analysis.

The taproot of this case is: was Schneider's second lawsuit filed outside the limitations period? To answer that question, we begin with the text of Iowa Code section 614.1(9)(*a*), which provides the governing statute of limitations:

> [Causes of action] founded on injuries to the person or wrongful death against any physician and surgeon, osteopathic physician and surgeon, dentist, podiatric physician, optometrist, pharmacist, chiropractor, physician assistant, or nurse, licensed under chapter 147, or a hospital licensed under chapter 135B, arising out of patient care, *within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known*, or received notice in writing of the existence *of, the injury or death for which damages are sought in the action, whichever of the dates occurs first*, but in no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death unless a foreign object unintentionally left in the body caused the injury or death.

(Emphases added). Given the two-year statute of limitations, the timeline of this case is of paramount importance. Miles disappeared from Harbor Point on November 11, 2021, meaning that, if we determine that her daughter knew, or

should have known on that date of the injury for which she seeks damages, then this case—filed on August 28, 2024—is time-barred because the two-year deadline expired on November 11, 2023. The action also would be time-barred if the clock started running on June 8, 2022, when Schneider filed the action requesting a judicial declaration of Miles's death. But, if we determine—as the district court ruled and Schneider asks us to—that the relevant start date for the limitations period was August 29, 2022 (when the district court accepted the jury verdict that Miles was presumptively dead), then this case, filed one day before the August 29, 2024 deadline, survives.

We recently addressed the same statute of limitations in *Estate of Cataldo v. RCHP-Ottumwa, LLC*, 32 N.W.3d 1 (Iowa 2026). There, a nurse fell on Jill Cataldo, breaking Cataldo's leg and precipitating an embolism that lodged in her lung, resulting in her death a few weeks later. *Id.* at 2–3. Exactly two years from the date of Cataldo's death, her estate filed a lawsuit against the treating hospital. *Id.* at 3. The hospital moved for summary judgment, arguing that the statute of limitations barred the estate's case. *Id.* The hospital took the position that the start date for calculating the limitations period was when the nurse broke Cataldo's leg. *Id.* The estate argued that the clock only began running on the date of her death. *Id.* The district court agreed with the hospital and dismissed the action as time-barred. *Id.*

On our review, we noted that wrongful-death claims are derivative of the injury that caused them, meaning that the death of the injured party increases the damages the estate can recover, but it does not give rise to a new cause of action. *Id.* at 5. We wrote:

> When the injury and its negligent cause are known during the patient's lifetime, the clock begins to run on any wrongful-death claim that results from the injury. Although the later death of the

> patient alters the nature of the damages available and transfers the claim to the estate representative, it does not reset the statute of limitations.

*Id.* at 6. Because we concluded that the start date for the limitations period was the date of Cataldo's initial injury, we affirmed the district court's ruling granting summary judgment and dismissing the estate's claims. *Id.*

Citing *Cataldo*, the defendants argue that Schneider was on inquiry notice upon Miles's disappearance, or at least by the date that Schneider petitioned for a declaration of Miles's death. But this case differs from *Cataldo*. Here, there was no known physical injury. Miles did not undergo a botched surgery. She was not wounded by hospital staff. She wandered away from the treatment facility and never returned. She had a history of escaping and being found unharmed later. From a legal standpoint, Miles was presumed alive until the jury returned a verdict of presumptive death on August 29, 2022. This is not a case where death enhances the damages from a personal injury; it is a case where death *is* the injury.

In *Cataldo*, the plaintiff had an actionable claim for negligence before the patient died: the hospital had a duty of reasonable care towards Cataldo, it breached that duty when a nurse carelessly fell on her, the breach of duty caused Cataldo's physical injuries, and Cataldo suffered damages first for her broken leg and then for her death. *Id.* at 2–3; *see also Peppmeier v. Murphy*, 708 N.W.2d 57, 61–62 (Iowa 2005) (describing the elements of medical negligence). By contrast, Miles did not suffer compensable injuries on the date of her disappearance, and, because she was never found, the date on which she suffered a compensable injury (if any) remains unknown.

To illustrate the point, consider the counterfactual: If all of the defendants' actions had been the same, but Harbor Point had located Miles within thirty

minutes of her disappearance, then there would be no right to sue because there was no compensable injury. So when does the action accrue and the statute of limitations begin to run? After Miles was missing for a day? She had been gone for that long before. Two days? Three? A week? Six months? A year? And what about the extent of Miles's injuries, if any? Without her presence, the range of potential damages is unknowable. If she had been found the next day, unharmed, there may not have been a compensable injury. If she had been found two weeks later with a broken leg, that would be a different injury with different damages. The analysis quickly devolves into a Sorites puzzle. The puzzle is solved, though, if we hold that—in cases where there is no discrete physical injury and it is unknown whether the person who disappeared is alive or dead— the limitations hourglass does not turn until the judicial determination of death.

This rule aligns with other jurisdictions that have adjudicated analogous issues. Take, for example, *Brown v. Pine Bluff Nursing Home,* 199 S.W.3d 45 (Ark. 2004). In *Brown,* a dementia patient wandered away and was never found. *Id.* at 46. His guardian sued the nursing home where the patient lived and, although the case was dismissed for lack of timely service of process, the Arkansas Supreme Court stated:

> Had there not been a dismissal with prejudice of the underlying negligence action, and had Brown simply waited to file the wrongful death complaint after obtaining the declaration of death from the probate court, her action would have been timely, as a wrongful death action does not arise until the date of the death.

*Id.* at 49 n.2. The *Brown* court reached this conclusion while applying the rule that wrongful-death actions are derivative of the negligent act—the same rule applies in Iowa. *Id.* at 48; *Cataldo,* 32 N.W.3d at 5.

In *Howard v. Equitable Life Assur. Soc. of the United States,* 85 P.2d 253, 257 (Wash. 1938) (en banc), the Washington Supreme Court, applied a similar

rule. In *Howard*, a wife attempted to collect insurance for her husband, who had fallen off a ferry and into a lake, but whose body had never been found. *Id.* at 253. The insurance company argued that a six-year statute of limitations prevented the widow from recovering. *Id.* at 254. The Washington Supreme Court wrote:

> It is evident that respondent did not have the legal right or ability to maintain an action upon the policy issued to her husband until the seven-year period had expired which enabled her to prove her husband's death. Prior to that time she owned a cause of action, but it had not ripened into one that could be enforced.

*Id.* at 257. The Washington Court of Appeals applied the *Howard* rule in *Nelson v. Schubert*, 994 P.2d 225, 229 (Wash. Ct. App. 2000). There, the court determined that a mother whose daughter had vanished could not sue the daughter's husband for wrongful death until it had been established as a matter of law that she was dead. *Id.* at 230. The *Nelson* court stated:

> We find the *Howard* analysis persuasive. Here, as in *Howard*, Julianna's death could not be established directly. There was no body and no evidence of death. Until he himself sought to rely on the presumption and probate her estate, Schubert himself had always maintained that his wife was, in fact, alive. Nelson's cause of action thus could not accrue without some proof of death, which in this case took the form of the passage of time. Once Nelson could establish Julianna's death by presumption, her cause of action "ripened" into one that could be enforced.

*Id.* at 229.

Both *Howard* and *Nelson* applied the common law rule that a person is presumptively alive until seven years after the person's disappearance. *Howard*, 85 P.2d at 255; *Nelson*, 994 P.2d at 229. Iowa, too, has a common law seven-year presumption of life for missing persons. As our court long ago explained:

> An accepted rule of evidence at common law was that, when a person has not been heard from by those likely to do so for many years, the presumption of the duration of life ceases at the end of seven years. This presumption is only that the person is then dead,

not that he died at any particular time during that period. In the absence of anything indicating an earlier death, it cannot be found that death occurred prior to the lapse of the entire period. But the termination of life at an earlier date may be found from circumstances so indicating, as those "relating to the character, habits, condition, affections, attachments, prosperity and objects in life, which usually control the conduct of men, and are the motives of their actions." The presumption of life continues until overcome or displaced by a more potent presumption, i.e., that of death; but this latter presumption has no retroactive force. To warrant the inference that death occurred earlier than presumed, there must be proof of such facts and circumstances connected with the person whose life is the subject of inquiry as, when submitted to the test of reason and experience, would force the conviction of death within a shorter period.

*Haddock v. Meagher* (*In re Meagher's Est.*), 163 N.W. 417, 419–20 (Iowa 1917) (citations omitted) (quoting *Tisdale v. Conn. Mut. Life Ins.*, 26 Iowa 170, 176 (1868)); *see also Rodskier v. Nw. Mut. Life Ins. of Milwaukee*, 248 N.W. 295, 299 (Iowa 1933) ("At common law the rule was that a presumption of death arose from an unexplained absence of seven years if reasonable efforts to learn his whereabouts were made. This rule prevails in Iowa and practically all other jurisdictions.").

Schneider could not wait out the seven-year common law period because of the six-year repose provision in Iowa Code section 614.1(9)(*a*). The Iowa Code provides a faster statutory alternative to the common law rule. Iowa Code section 633.518 permits an interested party to petition the district court for a judicial determination of death. It states:

If a petition is presented by an interested person to a district judge or magistrate alleging that a designated person has disappeared and after a diligent search cannot be found, and if it appears to the satisfaction of the judge or magistrate that the circumstances surrounding the disappearance afford reasonable grounds for the belief that the person has suffered death from accidental or other violent means, the judge or magistrate shall summon and impanel a jury of six qualified persons to inquire into the facts surrounding and the presumption to be raised from the

disappearance. If no one submits a petition within forty days of the reported disappearance, a judge or magistrate may submit the petition from personal knowledge of the case.

*Id.* Schneider relied on this statute to obtain a judicial pronouncement of Miles's presumed death.

We hold that Schneider could not bring the estate's action for wrongful death until her mother was declared dead. The legal presumption that Miles was alive did not end until the district court action determined that she had died. What is more, unlike *Cataldo,* Miles suffered no discrete injury at Harbor Point. Her family did not know, nor could they by reasonable diligence have known, of the existence or extent of any injuries to Miles's person. Only when the jury found and the court declared that Miles was dead, did a cause of action for her wrongful death accrue.

It may be argued that our rule permits a plaintiff to circumvent the statute of limitations by waiting to seek a judicial determination of death until after the limitations period has run. There are two responses to this argument. First, this case is unique. In almost all other cases, the date on which the plaintiff knew or should have known of the compensable injury will be obvious, as it was in *Cataldo.* Second, the repose provision in Iowa Code section 614.1(9)(*a*) ensures that a wrongful-death action against healthcare providers will be time-barred six years from the date of the alleged negligence.

**IV. Conclusion.**

For the foregoing reasons, we affirm the ruling of the district court and remand the case for further proceedings.

**Affirmed.**

All justices concur except Christensen, C.J., who takes no part.